UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMARA G. NELSON and TIMOTHEA RICHARDSON, individually and on behalf of all other persons similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>BELINDA C. CONSTANT, in her official capacity as Mayor of the City of Gretna, Louisiana, RAYMOND A. OSBORN, JR., in his official capacity as Magistrate of the Gretna Mayor's Court, OLDEN C. TOUPS, JR., in his official capacity as Magistrate of the Gretna Mayor's Court, WALTER J. LEBLANC, in his official capacity as City Prosecutor for the City of Gretna, ARTHUR LAWSON, JR., in his official capacities as Chief of Police and Marshal, TERRI BROSSETTE, in her official capacities as Clerk of the Gretna Mayor's Court and Lieutenant of the Gretna Police Department, and the CITY OF GRETNA, LOUISIANA.<br><br>    Defendants. | Case No. 17-cv-14581<br>(Class Action) |

## CLASS ACTION COMPLAINT

Plaintiffs Tamara G. Nelson and Timothea N. Richardson, by and through their undersigned attorneys, for their complaint against Defendants Belinda C. Constant, Raymond A. Osborn, Jr., Olden C. Toups, Walter J. LeBlanc, Chief Arthur Lawson, Jr., Lt. Terri Brossette, and the City of Gretna, allege as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1.   Plaintiffs in this action seek to rectify the egregious Due Process and Equal Protection violations that occur daily in the Mayor's Court of the City of Gretna, Louisiana. The

Defendant municipal officers of Gretna operate their Mayor's Court not as a forum for the legitimate adjudication and resolution of alleged violations of the Gretna Municipal Code but instead as a major source of revenue for the municipality.

2.      The Gretna Mayor's Court, as its name suggests, is completely under the control of Gretna's Mayor.  The defendants are prosecuted in the Mayor's Court by a Gretna prosecutor who is appointed by the Gretna City Council and serves at the pleasure of Gretna's Mayor.  The Magistrates who preside are likewise City of Gretna employees, appointed by the City Council and serving as judges at the pleasure of the Mayor.

3.      None of these officials are disinterested and neutral.  All of them are incentivized to maximize arrests, to multiply prosecutions and have the defendants found guilty so that the Magistrates can assess fines and fees against those defendants.  The fines and fees thus assessed fund the City of Gretna.  In fiscal year 2014–15, fees and fines from the Mayor's Court accounted for over 13.5% of the total revenue in Gretna's General Fund—which in turn funds the operations of the Mayor's Court and pays the salaries of police, prosecutors and judges.

4.      As the docket of the Gretna Mayor's Court expands so does the profitability of the Court's operations to the City of Gretna.  Unsurprisingly, there has been an explosion in the number of misdemeanor arrests and citations by the Gretna Police Department.  A disproportionate number of those arrested are African American citizens of Gretna.

5.      Defendants also operate a Deferred Prosecution program offering arrestees accused of violating a municipal ordinance the opportunity to have their charges dismissed in exchange for an agreement to pay a set fine (typically lesser in amount than the fine that would be imposed upon a finding of guilt).  There is no deferred prosecution option for those who are unable to participate in the Deferred Prosecution Program because they cannot afford to pay the

Program's fees. As a consequence, those found guilty in the Gretna Mayor's Court and sentenced to pay larger fees and fines are disproportionately the poor and those least able to pay the levied amounts.

6. If a defendant is unable to pay his fees and fines, the Clerk of Court relies on the issuance of attachments, the threat of incarceration, and the suspension of driver's licenses as a means of debt collection against the poorest defendants in the system.

7. In its transformation from a court of law to a business enterprise, the Gretna Mayor's Court, through the named Defendants, has routinely violated the Due Process and Equal Protection rights of those unfortunate enough to appear before it.

8. This action is a challenge, arising under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution, to the violation of Due Process as a result of the financial conflict of interest created when the City of Gretna funds its operations through fees and fines that the City's employees adjudicate and levy in the Mayor's Court of the City of Gretna.

9. This action also challenges Gretna's use of a "Deferred Prosecution" program as a violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, due to the program's discrimination against the indigent and the failure to consider an individual's ability to pay.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

12. Plaintiff Tamara G. Nelson is a resident of Gretna who was arraigned in the Gretna Mayor's Court on November 7, 2017, and charged with several traffic violations. Her trial on these charges is set for December 6, 2017.

13. Plaintiff Timothea N. Richardson is a resident of Marrero, Louisiana, and currently a participant in the Gretna Mayor's Court's "Deferred Prosecution Program." Ms. Richardson has unpaid fines from prior convictions in the Mayor's Court, for which the Mayor's Court has suspended her driver's license.

14. Defendant City of Gretna is a Louisiana municipality organized and incorporated under the Lawrason Act. La. R.S. §§ 33:321–463.

15. Defendant Belinda C. Constant is the Mayor of Gretna. She presides over the Mayor's Court and has sole executive authority in the City. She is a policymaker for the Gretna Mayor's Court.

16. Defendant Raymond A. Osborn is a Magistrate of the Gretna Mayor's Court. He presides over the Mayor's Court, exercising all the Mayor's judicial powers and authority. He is appointed by the City Council and serves at the pleasure of the Mayor. He is a policymaker for the Gretna Mayor's Court.

17. Defendant Olden C. Toups, Jr. is a Magistrate of the Gretna Mayor's Court. He presides over the Mayor's Court, exercising all the Mayor's judicial powers and authority. He is appointed by the City Council and serves at the pleasure of the Mayor. He is a policymaker for the Gretna Mayor's Court.

18. Defendant Walter J. LeBlanc is the City Prosecutor for Gretna. He prosecutes violations of municipal ordinances and administers the Deferred Prosecution program. He is

appointed by the City Council and serves at the pleasure of the Mayor. He is a policymaker for the Mayor's Court's Deferred Prosecution program.

19. Defendant Arthur Lawson, Jr., is the Chief of the Gretna Police Department. By law, the Chief of Police is also the executive officer of the Mayor's Court. He or his designee must attend the Mayor's Court and serve its process. He is a policymaker for the Gretna Police Department's Clerk of Court division.

20. Defendant Lt. Terri Brossette is an officer of the Gretna Police Department and the Clerk of Court for the Gretna Mayor's Court. The Clerk of Court collects fines and fees from convicted defendants and from pre-arraignment participants in the Deferred Prosecution program. Those fines and fees are transferred to Gretna's General Fund. The Clerk of Court also issues warrants and suspends licenses for nonpayment of fines and fees. She is a policymaker for the Gretna Police Department's Clerk of Court division.

21. All Defendants are sued in their official capacities only.

## FACTUAL BACKGROUND

22. Gretna is the parish seat of Jefferson Parish. In 2014, Gretna was home to about 17,801 residents, according to estimates of the U.S. Census Bureau.

23. Around 35% of Gretna's population is black. This percentage of the population has remained relatively stable since 2000, with the figure varying between 34–36% over that time period. The total population has also remained stable. Since the 2000 Census, Gretna's total population has grown by only 378 people.

24. Yet between 2000 and 2014, the annual number of arrests made by the Gretna Police Department exploded from 1,309 arrests in 2000 to 7,699 arrests in 2014, according to

data reported by the Gretna Police Department to the FBI's Criminal Justice Information Services.

25. The Gretna Police Department maintains a quota of arrests and citations that its field officers must meet, with the express purpose of generating revenue for Gretna.

26. Gretna Police officers not making the necessary number of arrests and citations have been threatened with termination and admonished by their supervisors:

> Either put somebody in jail or write somebody a summons every day. You have got 12 hours. That shouldn't be too hard to do, Paul. Somebody has got to go to jail every 12 hours either by summons (inaudible). Citations, three to four a day. That can happen in one traffic stop. If you make two arrests today, that doesn't mean sit on your ass tomorrow because you made your quota . . . . Each day try to maintain your goal, one arrest, one summons. Warrants and attachments don't count. Whatever Yellerton's first name is, and Mark Pickens don't count because **there is no money going into the system. Those guys don't go to court. They don't pay their fines. I am talking about good strong solid arrests with convictions and/or make people pay their fines.** Same thing for citations. One arrest, do a summons or physically take them to jail, three or four citations.[1]

*Swear v. Lawson*, 2:15-cv-06591-NJB-JVM, ECF No. 35-2 at 14 (E.D. La. Oct. 3, 2017) (emphasis added)

27. A disproportionate number of citizens arrested by the Gretna Police Department are black: 5,064, or 65.8%, of the total 7,699 arrests.

28. The criminal section of Gretna's municipal code is expansive, including analogues to many state misdemeanor offenses. This allows the Mayor's Court, which has jurisdiction over violations of municipal ordinances, to prosecute a broad range of offenses

---

[1] Statement by Lt. J.R. Rogers to Officer Paul Pichoff on Jan. 7, 2014, during Officer Pichoff's annual review. Officer Pichoff recorded audio of the annual review on his phone, and later swore to declaration authenticating the recording and its accompanying transcript, which were submitted as exhibits in opposition to summary judgment in *Swear v. Lawson*, 2:15-cv-06591-NJB-JVM, ECF No. 35-2 at 14 (E.D. La. Oct. 3, 2017). In that suit, former Gretna Police Department officer Daniel Swear claims that he was forced to resign from the department because of his vocal opposition to the department's unlawful quota system, which included his prominently displaying a vanity license plate printed with "40:2401.1", the section of the Louisiana Revised Statutes that forbids arrest quotas. His opposition to summary judgment was further supported by a recording of Swear's supervising officer discussing the quotas, *id.*, ECF No. 35-4, and declarations from former officers who were disciplined for failure to fulfill arrest and citation quotas, *id.*, ECF Nos. 35-1; 35-3.

including traffic violations, disturbing the peace, public drunkenness, assaults, thefts, and prostitution.

29.     In 2000, slightly over 10% of Gretna's arrests were reported to the FBI under categories of "drunkenness," "disorderly conduct," and "all other offenses except traffic"—a catch-all covering various nonviolent misdemeanor offenses. But by 2014 those categories accounted for over 60% of the total arrests by the Gretna Police Department. During that same time period, the number of Gretna police arrests reported to the FBI for felony crimes of violence and theft markedly declined.

30.     As the petty crime arrests increased, so did the revenue to the City of Gretna. Gretna's revenue from fines and court fees assessed by the Mayor's Court grew from $494,421 in fiscal year 2000–01 to $2.4–2.5 million in 2014–15.[2]

31.     The budget for the Mayor's Court nearly tripled during this timeframe, currently sitting at just under a million dollars.

A. **Representative Plaintiffs**

32.     Plaintiff Tamara Nelson is self-employed and the primary support for her young child. Ms. Nelson has received citations by the Gretna Police Department for various traffic infractions. Her case was lodged in the Mayor's Court, where she is being prosecuted by an employee of the Mayor, in a court in which the Mayor's designated representative acts as trier of fact, and, if convicted, her fines and court costs will be collected by Police Department employees acting at the direction of the Mayor and his agents.

---

[2] An additional $3 million dollars was collected by the City through its network of Speed and Red-light enforcement cameras. This enforcement program is administered by the Gretna Police Department. Motorists who receive an electronic enforcement ticket may request an administrative hearing, and the administrative determination may be appealed to the Mayor's Court. Gretna Municipal Code § 52-335.

7

33. Plaintiff Timothea Richardson is employed as a medical assistant and is the sole provider for her three children.

34. Ms. Richardson is a current participant in the Mayor's Court's Deferred Prosecution program. The Mayor's Court has told her that she can avoid prosecution for four traffic citations in exchange for $500. Ms. Richardson executed a contract memorializing this agreement. The first payment was due on November 27, 2017. Ms. Richardson was unable to afford to make a payment on that date. She previously told officials of the clerk's office that she could not afford to pay this fee. No nonfinancial alternative was presented to her.

35. Ms. Richardson also has outstanding debt from prior convictions in the Mayor's Court for traffic violations. In her last appearance at the Mayor's Court, clerk's office staff threatened Ms. Richardson with arrest on the spot if she did not make a payment of $100 toward that outstanding debt. Ms. Richardson had to call a relative to loan her $100 and bring it to the Mayor's Court that day to prevent Ms. Richardson's arrest.

36. The Mayor's Court has ordered the suspension of Ms. Richardson's driver's license and the assessment of the $25 reinstatement fee, due to her unpaid fines and fees. The debt must be paid before her suspension can be lifted.

**B. The Structure and Function of the Mayor's Court.**

37. Gretna has a Mayor-Aldermen form of government as established by the Lawrason Act, La. R.S. §§ 33:321–463.

38. The Mayor acts as chief executive, submits an annual budget to the City Council, has veto power over the budget ordinance, has all contracting and spending authority within the limits of the approved budget, and has sole authority to direct payments from the treasury.

39. The City Council[3] is the legislative branch of Gretna's government.

40. There is no separate judicial branch of the city government.

41. The Mayor has jurisdiction over all violations of municipal ordinances in Gretna. The enabling state statute grants authority to the Mayor to adjudicate all such violations and impose fines, imprisonment, or periods of probation as punishment in a Mayor's Court. The Mayor is also empowered to impose court fees for each offense, not to exceed $30. La. R.S. § 33:441(A).

42. The Mayor may request the City Council to appoint an attorney to serve as Court Magistrate and preside over the Mayor's Court in place of the Mayor. The Magistrate exercises the Mayor's full powers over the court. Although his salary is set by the City Council, the Magistrate "serve[s] at the pleasure of the mayor." La. R.S. § 33:441.20.

43. Similarly, the Mayor may request the City Council to appoint an attorney to act as City Prosecutor in the Gretna Mayor's Court. The City Prosecutor serves at the pleasure of the mayor, and his salary is set by the City Council. La. R.S. § 33:441(B).

44. The vast majority of criminal defendants appearing in Mayor's Court are not represented by attorneys.

45. Gretna has created a clerk of court's office for the Mayor's Court that exists separately from the office of the City Clerk.

46. Terri Brossette, a Lieutenant in the Gretna Police Department, acts as the Clerk of Court, with a roster of 13 additional administrative and security staff.

47. On information and belief, Lt. Brossette acts as the designee of the elected Chief of Police, Defendant Lawson, pursuant to the power granted in La. R.S. § 33:442, whereby

---

[3] Although referred to as a "Board of Aldermen" throughout the Lawrason Act, a municipal legislative body may choose—as Gretna has—to change its name to the "City Council." La. R.S. § 33:343

9

Gretna's "marshal [i.e., Chief of Police] shall attend the court and serve its process and act as its executive officer."

48. The "Clerk of Court" is listed as a division of the Gretna Police Department on its web site.[4] Similarly, Gretna's website lists the "Municipal Court" as a division of the Police Department.[5] Furthermore, the Gretna Police Department's Operations Manual lists "Clerk of Court Office Commander" as a member of the Department's executive staff.

49. In her management of the docket of the Mayor's Court, Lt. Brossette also derives authority directly from the Mayor and his agents.

50. The Clerk of Court collects all fines and fees levied by the Mayor's Court and also collects fees paid under the Mayor's Court's Deferred Prosecution program. The Clerk of Court deposits these fines and fees into Gretna's general fund.

51. The Clerk of Court also issues warrants for unpaid fines and fees.

52. Thus, the Police Department not only has effectuated an exponential increase in arrests through which Gretna funds a large part of its operations, but it also acts as collector of those legal debts.

**C. Revenue Generated by the Mayor's Court.**

53. Most municipal ordinance violations are punishable by up to a $500 fine.

54. An additional contempt-of-court fee of $150 is assessed for missed court dates or late payments of fines.

55. The court may also assesses $30 in court costs for each offense.

56. In calendar year 2015, 3,245 criminal cases were filed in the Gretna Mayor's Court. This is the statistical equivalent of one criminal case for every six Gretna residents. In

---

[4] https://www.gretnapolice.com/department-information/divisions/ (last accessed Dec. 4, 2017)
[5] http://www.gretnala.com/department/division.php?structureid=38 (last accessed Dec. 4, 2017)

light of the U.S. Census estimate of 6,968 households in Gretna, this translates to an average of one in two households having criminal charges against a household member.

57. In that same time frame, the Gretna Mayor's Court issued 11,651 bench warrants. Bench warrants are issued both for failures to appear and for failures to pay fines and fees.

58. In fiscal year 2014–15, the Mayor's Court collected, as revenue for the General Fund, over $1,650,000 in fines, fees, and court costs arising from convictions.

59. These fines and fees amounted to about 9% of Gretna's General Fund revenue in fiscal year 2014–15.[6]

60. Those citizens who appear before the Mayor's Court and are ultimately convicted may opt to pay their fines and fees through an installment agreement with Gretna.

61. In the event of late payments, the installment agreement provides for acceleration of all payments, an additional $150 contempt-of-court fee, suspension of driving privileges pursuant to article 885.1 of the Louisiana Code of Criminal Procedure, and garnishments.

62. People whose driver's licenses are suspended for failure to pay their fines and fees are assessed an additional Driver's License Reinstatement Fee of $25, which is deposited into Gretna's general fund.

**D. The Deferred Prosecution Program.**

63. Before every arraignment, the Magistrate judge offers the defendants the opportunity to consult with the City Prosecutor, who also serves at the Mayor's pleasure, regarding the defendants' eligibility to enter the "Deferred Prosecution Program."

---

[6] Beyond these fines and fees that are retained by Gretna, the Court collects a number of additional fees that are transferred to other non-municipal government actors or state-administered funds, such as the Traumatic Head & Spinal Cord Injury fund.

64. The "Deferred Prosecution Program," which is administered by the City Prosecutor, enables defendants charged with traffic and misdemeanor municipal ordinance violations to avoid prosecution in the Mayor's Court.

65. Participation in the program is offered to defendants upon their first appearance in the Mayor's Court. Defendants are advised that the Deferred Prosecution Program is an opportunity for defendants to have their charges dropped prior to arraignment.

66. The Magistrate judges and City Prosecutor of the Mayor's Court inform criminal defendants that by participating in the program they will avoid reporting of their traffic and criminal charges to insurance companies and the FBI.

67. Eligibility to participate in the Deferred Prosecution Program is left to the discretion of the City Prosecutor.

68. The Deferred Prosecution Program consists of payment of a fee and a "suitable period of probation"—often three months—during which no new violations may occur.

69. Upon full payment of the fee and completion of probation, the City Prosecutor dismisses the pending charges.

70. The amount of the Deferred Prosecution fee, the time in which to pay the fee, and the terms of probation are all within the discretion of the City Prosecutor. Typically, the fee is $250 per charge, to be paid within three months. The only limit on the fee is that it cannot exceed the total of fines and costs that the defendant would pay if he were found guilty.

71. If a defendant fails to complete payments to the Deferred Prosecution Program within the specified time frame, she forfeits all the money she has paid up to that date, she is terminated from the program, and the City Prosecutor places her case back on the docket for arraignment and trial.

72. The terms of the Deferred Prosecution Program are memorialized in a contract between the City Prosecutor and each Deferred Prosecution participant. The contract conditions the City Prosecutor's dismissal of the charges upon the payment of a fee "as agreed upon with the city prosecutor." The contract goes on to state, "Failure to complete the Deferred Prosecution Program or assigned payment plan will result in program termination, **forfeiture of previous payments**, a plea of not guilty to be entered[,] and the matter set for trial." (Emphasis in original)

73. In FY 2014–15, the Deferred Prosecution Program generated about $785,000—or 4% of the total revenue to the City of Gretna General Fund. Total revenue generated by the Deferred Prosecution Program, in combination with fines, and other fees assessed by the Mayor's Court amounts to over 13% of the City of Gretna's general fund.

74. Indigent persons, who are unable to make the payments required for participation in the Deferred Prosecution Program, are excluded. There is no program or mechanism available to them to secure the dropping of charges and to avoid reporting of traffic and criminal charges to insurance companies and the FBI.

75. Nor are there policies or standards in place to differentiate between those who willfully fail to pay the Deferred Prosecution fee and those who are unable to make payments because of financial hardship.

76. Deferred Prosecution fees and court costs, fines, and fees are collected by Clerk's office staff at the direction of Defendants Chief Lawson and Lt. Brossette.

**E. Debt Collection Practices of the Clerk of Court / Police Department**

77. Citizens who have been convicted in the Gretna Mayor's Court and cannot afford to pay their fines and fees are subject to debt collection by the Clerk of Court, a division of the Gretna Police Department.

78. The Clerk of Court enters into repayment "agreements" with debtors.

79. The minimum monthly payment is typically set at $50.

80. The terms of the repayment "agreement" state: "You have agreed to pay the fine on a monthly basis and understand that if a payment is missed or late[,] a warrant will be issued on the unpaid balance[,] and you must pay the remaining balance in full. Failure to attend to this matter may also result in suspension of your driver's license and or your record being forwarded to the state for collections in the form of garnishments."

81. The suspension of driving privileges proceeds without notice or opportunity to be heard, and the decision to suspend is made by the Clerk's staff, not a judicial officer.

## CLASS ACTION ALLEGATIONS

82. Plaintiffs bring this action on behalf of themselves and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

83. Putative class A consists of persons cited to appear before the Gretna Mayor's Court who are awaiting adjudication of their criminal or traffic cases. They are represented here by Ms. Tamara Nelson.

84. Putative class B consists of persons who in the past year were denied participation in, terminated from, or threatened with termination from the Deferred Prosecution program due to their inability to pay program fees. They are represented here by Ms. Timothea Richardson.

85. The members of each class are so numerous that joinder of all members is impractical. Thousands of men and women face criminal proceedings in the Mayor's Court each year. The classes also includes a large, unknown, and unknowable number of future members, as people are regularly charged with offenses adjudicated in the Mayor's Court.

86. There are questions of fact and law common to the classes including, but not limited to: (a) the structure of City of Gretna government; the procedures followed in City of Gretna Mayor's Court; and the amount of the City's revenue that is generated by fines and fees imposed on defendants in the Gretna Mayor's Court; (b) whether the Mayor's dual role as chief executive of City government and as judge and executive of the City's court creates a conflict of interest in violation of criminal defendants' Due Process rights; (c) whether alternatives to monetary payments are accepted for participation in the Deferred Prosecution program or for the satisfaction of sentenced fines and fees; (d) whether the availability of the Deferred Prosecution program only to those who can afford it is a violation of the Equal Protection and Due Process clauses of the constitution; (e) whether the contracts entered into for participation in the Deferred Prosecution program suffer from vices of consent under Louisiana law; and (f) whether the summary imposition of penalties, like driver's license suspension for failure to pay fees, fines, and costs without consideration of a defendant's financial ability to pay or offering of non-financial alternatives violates the Due Process and Equal Protection clauses of the Constitution.

87. Because the statutes, policies, practices, and customs challenged in this litigation apply with equal force to the named Plaintiffs and the other members of the classes, the claims of the Plaintiffs are typical of the classes in general.

88. The named Plaintiffs and their counsel will fairly and adequately represent the interests of the classes. The named Plaintiffs possess strong personal interests in the subject matter of the lawsuit and are represented by experienced counsel with expertise in civil rights litigation. Counsel have the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action.

89. Questions of law or fact common to class members predominate over questions affecting individual members, and the class action is the superior means of fairly and efficiently adjudicating this controversy.

90. The Defendants have acted or refused to act on grounds generally applicable to members of each class: their policies, procedures, practices, acts, and omissions have affected all class members. Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole.

## CLAIMS FOR RELIEF

### COUNT ONE
**Due Process Challenge to the Financial Conflict of Interest in the Mayor's Court**

91. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint in this Count One.

92. By statute, the Mayor holds chief executive authority and simultaneously exercises judicial authority over violations of municipal ordinances. City employees serving at the Mayor's pleasure adjudicate, prosecute, and defer prosecution of crimes in the Mayor's Court, thereby generating fee and fine income that directly benefits the Mayor, his employees and the City of Gretna.

93. The Mayor, her Police Department, her City Prosecutor and her Magistrate judges labor under an inherent conflict of interest, because they are incentivized to maximize the fee and fine income generated through Mayor's Court prosecutions rather than to fairly adjudicate the alleged municipal offenses under the Mayor's Court's jurisdiction.

94. Defendants appearing in criminal proceedings before the Mayor's Court are deprived of their Due Process right to appear before a disinterested and impartial tribunal, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT TWO
**Equal Protection and Due Process Challenge to Gretna's Deferred Prosecution Program**

95. Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint in this Count Two.

96. The Mayor's Court's Deferred Prosecution Program provides defendants with the present financial ability the opportunity to obtain dismissal of the charges prior to arraignment in exchange for the defendant's payment of a fee and a short period of probation.

97. Defendants without the present ability to pay the Deferred Prosecution Program fee are excluded. There are no non-financial options for participation in the Program.

98. The Mayor's Court's Deferred Prosecution program thereby discriminates against defendants on the basis of their income, subjecting defendants to criminal prosecution solely because they cannot afford to pay the Program fee in violation of the Equal Protection and Due Process Clauses of the United States Constitution.

## COUNT THREE
**Due Process and Equal Protection Claims for Summary Suspension of Drivers' Licenses**

99. Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint in this Count Three.

100. This Count is brought against Defendants Brossette and Lawson for their violations of the Due Process and Equal Protection rights of Mayor's Court defendants whose driver's licenses they cause to be summarily suspended without hearing when those defendants are unable to pay fees and fines assessed in Mayor's Court proceedings.

101. Plaintiffs possess a property interest in their driver's licenses and in the privileges conferred by those licenses, which may not be taken without notice and a hearing.

102. Defendants Brossette and Lawson's summary suspension of Plaintiffs' driver's licenses for failure to pay fines and fees violates the Due Process and Equal Protection clauses because no consideration is granted for whether Plaintiffs are able to afford payment of these fines and fees. No inquiry is made into the reasons for nonpayment, resulting in additional punishment solely on the basis of a person's poverty.

103. Defendants' actions further offend Equal Protection because indigent Mayor's Court debtors are subjected to more onerous collection practices for unpaid court debts than civil debtors would be.

## REQUEST FOR RELIEF

Plaintiff requests that this Court:

A. Declare that the Gretna Mayor's Court suffers from an unconstitutional conflict of interest that violates Due Process rights of those defendants appearing before it.

B. Declare that the Mayor's Court and City Prosecutor's Deferred Prosecution Program violate the Equal Protection and Due Process Clauses.

C. Enter an order enjoining Defendants from imposing fines, fees, court costs or otherwise from financially profiting from violations of the Gretna Municipal Code within the Mayor's Court;

D. Enter an order requiring Defendants to offer participation in the Deferred Prosecution program to all accused of municipal violations, not only those that can afford to pay;

E. Enter an order enjoining Defendants to refund all Deferred Prosecution fees from those who were terminated from the program for non-payment of fees and subsequently prosecuted;

F. Enter an order enjoining Defendants to require meaningful hearings regarding a criminal defendant's ability to pay prior to collection of any fines, fees, costs, or imposition of penalty for any violation of Gretna Municipal Code if the Mayor's Court's unconstitutional conflict of interest has otherwise been resolved;

G. Enter an order enjoining Defendants from suspending driver's licenses for nonpayment of fines and fees in the future and to reinstate all driver's licenses that have been suspended by the Mayor's Court.

H. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

I. Order all other relief this Court deems just and proper.

Respectfully submitted,

*/s Eric A. Foley*
Eric A. Foley, La. Bar No. 34199, TC
Katie M. Schwartzmann, La. Bar No. 30295
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
eric.foley@macarthurjustice.org
katie.schwartzmann@macarthurjustice.org