| | |
|---|---|
| **TAMARA G. NELSON and TIMOTHEA RICHARDSON, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-14581** |
| **MAYOR BELINDA CONSTANT, ET AL** | **SECTION "B"(1)** |

## OPINION

Plaintiffs Tamara G. Nelson and Timothea Richardson filed a "Motion to Certify Class" (Rec. Doc. 2), seeking to certify two classes of prospective plaintiffs.

**FACTS AND PROCEDURAL HISTORY**

On December 05, 2017, Plaintiffs filed a class action complaint seeking to rectify "[d]ue [p]rocess and [e]qual [p]rotection violation[s]" in the Mayor's Court of Gretna, Louisiana.[1] Rec. Doc. 1 at 1-2. Specifically, Plaintiffs allege that the Mayor's Court is improperly operated by Defendants as a source of income for the municipality. *See id*. The fines and fees that are assessed by the Mayor's Court fund the City of Gretna, the Mayor's Court, and the salaries of police officers, prosecutors, and judges. *See id*. at 2. Defendants and other officials of the Mayor's Court, who none of are disinterested or

---

[1] In their Amended Complaint, filed on May 17, 2018, Plaintiffs brought forth two claims for relief. *See* Rec. Doc. 28-1 at 16. The first claim is "Due Process Challenge to the Financial Conflict of Interest in the Mayor's Court." *Id*. The second claim is "Equal Protection and Due Process Challenge to Gretna's Deferred Prosecution Program." *Id*. at 17.

neutral, are incentivized to maximize arrests and prosecutions. *See id*. "A disproportionate number of those arrested are African American citizens of Gretna." *Id*. Plaintiffs further allege that Defendants target the poor through their Deferred Prosecution Program[2]. *See id*. at 2-3.

The instant motion seeks to certify two classes of prospective plaintiffs, Class A and Class B. *See* Rec. Doc. 2. Class A, purportedly represented by Plaintiff Nelson, is comprised of "all persons with criminal prosecutions pending before the Gretna Mayor's Court who are awaiting trial of their criminal or traffic offenses." Rec. Doc. 2-1 at 2; *see also* Rec. Doc. 28-1 at 14. Class B, purportedly represented by Plaintiff Richardson, is comprised of "persons who in the past year were denied participation in, terminated from, or threatened with termination from the Deferred Prosecution Program due to their inability to pay program fees." Rec. Doc. 2-1 at 2; *see also* Rec. Doc. 28-1 at 15.

On June 20, 2018, this Court held oral argument on the Motion (Rec. Doc. 2). Since then, pursuant to an Order by this Court (Rec. Doc. 47), the parties have completed limited discovery and submitted additional briefing on legal questions raised at oral

---

[2] This program offers arrestees the option to pay a set fine (usually lower than the fine that would be imposed upon a finding of guilt) and then have their charges dismissed. There is no similar option that allows arrestees that are unable to afford the set fine to have their charges dismiss. As a result, Plaintiffs allege, those that are least able to pay are sentenced to pay larger fines and fees.

argument, including but not limited to sub-classes, standing, applicability of *Younger*, and numerosity. *See* Rec. Doc. Nos. 50, 51, 52, 54, 55, 56, 59.

**Plaintiffs' Contentions**

Plaintiffs contend that they easily satisfy Rule 23(a) and 23(b)(2). *See* Rec. Doc. 2-1 at 3. The number of class members, for both classes, range from the hundreds to the thousands. *See id*. at 4. That number will continue to grow as the Mayor's Court continues to hold court sessions. *See id*. The indeterminate number of future class members makes joinder impracticable, further satisfying numerousity. *See id*. There is a common question as to whether Defendants are violating the class members' equal protection and due process rights, satisfying commonality. *See id*. at 9. Plaintiffs were subjected to the same practices and constitutional violations as alleged in their complaint for the class members, satisfying typicality. *See id*. at 9-10. Of the two named Plaintiffs, one has a case pending before the Mayor's Court and the other is a current participant in the Mayor Court's Deferred Prosecution, satisfying adequate representation. *See id*. Their counsel, MacArthur Justice Center, has experience in litigating complex civil rights matters, further satisfying adequate representation. *See id*. at 11. The relief sought by Plaintiffs for the class is declaratory or injunctive, satisfying Rule 23(b)(2). *See id*. at 12.

In their supplemental briefing, Plaintiffs further contend that they meet the numerousity prong. *See* Rec. Doc. 51 at 1-2. Plaintiffs offer more exact numbers[3] and suggest that Class B be split into two sub-classes. *See id*. at 2-3. Sub-class B1 consists of approximately 50 people and sub-class B2 consists of an unknown number of people because of the shifting of people as new people are cited and go to trial. *See id*. at 3. Plaintiffs believe that this case "must be maintained as a class action because of the scope of relief sought and to ensure that this Court's ultimate orders are enforceable." *Id*. at 5. A class action is the only efficient way to secure relief because a declaration that the Mayor's Court violates due process will not operate as an injunction against the practices of the court and this Court would have to continuously adjudicate individual cases in the future. *See id*. at 6-7. The availability of declaratory relief does not weigh against class certification. *See* Rec. Doc. 59 at 2. *Younger* abstention does not apply here because the Mayor's Court is biased and there are no ongoing state court proceedings. *See* Rec. Doc. 51 at 7-8.

---

[3] Through discovery, Plaintiff found that "the city filed 8,962 cases in the Mayor's Court in 2017 and 3,965 cases from January 1 to June 30 of [2018]." Rec. Doc. 51 at 2. Plaintiff also found that approximately 50 people within the last three years forfeited fees paid into the Deferred Prosecution Program when they were terminated from the program from failure or inability to make all payments and approximately 50 people are currently awaiting trial who were terminated from the program at some point in the past. *See id*.

In their reply, Plaintiffs clarify that their action challenges only the Mayor's Court's practices not the Lawrason Act. *See id.* at 3. Plaintiffs contend that Defendant's concerns regarding Class B and its potential sub-classes are unwarranted. *See id*. at 2. Defendant's settlement negotiations and policy changes are allegations of voluntary cessation and do not serve as a basis to deny class certification. *See id*. at 1. This Court will be able "to quickly and accurately determine membership of Class B and its potential sub-classes" through financial affidavits. *Id*. at 2. Plaintiffs restate that *Younger* abstention is not applicable and that this Court should not make a ruling on its applicability without allowing parties a "full opportunity for discovery." *Id*. at 4-9.

**Defendants' Contentions**

   **(1) Defendants Arthur Lawson, Jr. and Terri Brossette ("Defendants 1")**

In their response, Defendants 1 contend that class certification should be denied and that jurisdiction over this matter should be declined. *See* Rec. Doc. 55 at 15. Defendants 1's contentions regarding the denial of class certification focus on Class B and its sub-classes. For example, the alleged numerousness of the sub-class may be moot due to settlement negotiations and policy changes. *See id*. at 5. Several of Plaintiffs' requests for relief are in the process of being remedied or have already been

remedied. *See id*. at 6. Further, the definition that Plaintiffs

offer for Class B is not as fitting as they make it seem because

a class member's ability to pay requires individual, case-by-case

determination, making it hard for this Court to determine who is

and who is not a member of the class. *See id*. at 4-6. Lastly, a

class action is not the only method available to Plaintiff to

adjudicate their alleged controversies. *See id*. at 7. The proper

avenue for Plaintiffs is a declaratory judgment action, without

class certification. *See id*. at 14-15.

Defendants 1 also contend that *Younger* abstention is

appropriate. *See id*. at 8. Plaintiffs' assertion that the Mayor's

Court is biased does not preclude *Younger* abstention because

Plaintiffs do not have to file a declaratory judgment action in

the Mayor's Court. *See id*. They can also file it in the District

Court as to the constitutionally of the Lawrason Act. *See id*.

Further, the mayor does not solely appoint court representatives

and the salaries of those representatives are not based on the

number of convictions they obtain. *See id*.

**(2) Defendants Mayor Belinda C. Constant, Magistrate Raymond A. Osborn, Jr., Magistrate Olden C. Toups, Jr., and Prosecutor Walter J. LeBlanc ("Defendants 2")**

Defendants 2 adopt all arguments and position advanced by

Defendant 1. *See* Rec. Doc. 54 at 1. Defendants 2 add that the cases

Plaintiffs use to support their contentions are "inapposite to the

actual structure of Gretna's Mayor's Court and the Magistrates who

preside over it." *See id*. Magistrate Toups and Osborn are salaried employees so their salaries remain the same regardless of the fines issued. *See id*.

**LAW AND ANALYSIS**

   **A. Fed. R. Civ. P. 23(a) and 23(b)(2)**

District courts "maintain[] substantial discretion in determining whether to certify a class action . . . ." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998) (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471-72 (5th Cir. 1986)). To certify a case as a class action, a plaintiff must satisfy the four prerequisites of Fed. R. Civ. P. 23(a) and show that its case fits into one of three class-action type categories of Fed. R. Civ. P. 23(b). *See* FED. R. CIV. P. 23.

   **(1)  Fed. R. Civ. P. 23(a)**

The four prerequisites of Rule 23(a) are numerousity, commonality, typicality, and adequacy of representation. *Id*. Specifically, Rule 23(a) states that a plaintiff must show:

   (1)  the class is so numerous that joinder of all
        members is impracticable;

   (2)  there are questions of law or fact common to
        the class;

   (3)  the claims or defenses of the representative
        parties are typical of the claims or defenses
        of the class; and

   (4)  the representative parties will fairly and
        adequately protect the interests of the class.

FED. R. CIV. P. 23(a)(1)-(4).

### (a) Numerosity

To satisfy the numerosity prong, a plaintiff must show that the class is so numerous that joinder of all members is impracticable. *See* FED. R. CIV. P. 23(a)(1). There is no absolute number. *See General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318 (1980). There must be an examination of the specific facts of each case. *See id.* Plaintiff must offer some evidence as to the reasonable estimate of the number of purported class members. *See Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981). However, Plaintiff is not required to offer evidence of exact class member size or class member identity. *See Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999).

Courts have found that joinder is impracticable when the proposed class consists of more than forty people. *See id*. at *624* (citing 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992)) (suggesting that a class of more than forty "should raise a presumption that joinder is impracticable"); *Boykin v. Ga.-Pac. Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (20 members was insufficient to meet the numerosity requirement but 317 members was sufficient)). Nonetheless, "[s]maller classes are less objectionable where . . . the plaintiff is seeking injunctive relief on behalf of future class members as well as past and

present members." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir.

1975) (citations omitted). Plus, "a number of facts other than the

actual or estimated number of purported class members may be

relevant to the 'numerosity' question; these include, for example,

the geographical dispersion of the class, the ease with which class

members may be identified, the nature of the action, and the size

of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038 (citations

omitted).

Plaintiffs have satisfied the numerousity prong. There are

over three thousands cases filed in the Mayor's Court on a yearly

basis. Class A, taking Plaintiffs allegations as true, is comprised

of thousands of class members. Defendants make no argument against

that conclusion. Class B, from the original information alleged,

is comprise of hundreds of class members or, at minimum, several

dozen of class members. From supplemental information, the sub-

classes of B seem to be comprised of at least 50 class members.[4]

Both the classes and the sub-classes contain future members,

frustrating the practicability of joinder.

Even if some of those class members will, in the near future,

vanish because of settlement negotiations, more class members will

---

[4] Defendants contend that it will be administratively unfeasible to determine
membership of Class B's sub-classes because this Court will have establish which
potential members are actually unable to pay. *See* Rec. Doc. 55 at 2-5. Plaintiffs
suggest a financial affidavit or some other sworn declaration from each
potential members. *See* Rec. Doc. 59 at 2. Plaintiffs' suggestion may work if
the sub-class remains around 50 class members but as the number increases
administrative unfeasibility increases.

appear as the Mayor's Court continues to conduct court sessions. The contention that new policy changes moot numerousity is not convincing. *See City News and Novelty v. City of Waukesha*, 531 U.S. 278, 283 n.1 (2001) (stating that voluntary cessation of a challenged practice rarely moots a federal case). Therefore, Plaintiffs have sufficiently alleged that both the classes and sub-classes are comprised over forty class members as well as future members, establishing that joinder is impracticable and numerousity is met.

### (b) Commonality

To satisfy the commonality prong, a plaintiff must show that there are questions of law or fact common to the class. *See* FED. R. CIV. P. 23(a)(2). Specifically, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' . . . . This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349-350 (2011)(quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, "[t]heir claims must depend upon a common contention . . . [which] must be of such a nature that it is capable of [class wide] resolution . . . ." *Id.* at 350.

Plaintiffs appear to satisfy the commonality prong. Examples of questions of law or fact that are common to the class include but are not limited to whether alternatives to monetary

payments are accepted for participation in the Deferred
Prosecution program or for the satisfaction of sentenced fines and
fees; whether the availability of the Deferred Prosecution program
only to those who can afford it is a violation of the Equal
Protection and Due Process clauses of the constitution; and whether
the summary imposition of penalties, without consideration of a
defendant's financial ability to pay or offering of non-financial
alternatives, violates the Due Process and Equal Protection
clauses of the Constitution. *See* Rec. Doc. 28-1 at 15. Plaintiffs
list a total of at least six questions of law or fact common to
all class members in their pleadings. See Rec. Doc. Nos. 28 & 2.
The resolution of those questions will affect all or a significant
number of the class members. However, financial ability to pay
for program costs is a common question that may lead to
uncommon results due to individualized financial assessments.

### (c) Typicality

To satisfy the typicality prong, a plaintiff must show that
the claims or defenses of the representative parties are typical
of the claims or defenses of the class. *See* FED. R. CIV. P. 23(a)(3).
"The purpose of this requirement is to ensure that the interests
of the class representatives are similar to those of the other
members of the class." *Broussard v. Foti*, No. 00-2318, 2001 WL
699525, at *2 (E.D. La. June 18, 2001) (citing *Cope v. Duggins*,
No. 98-3599, 2000 WL 381928, at *3 (E.D. La. Apr. 13, 2000)). Thus,

"[a] plaintiff's claim is typical if it arises from the same event or practice giving rise to the claims of other class members and is based on the same legal theory as the class members." *Cope*, 2000 WL 381928, at *3 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

The claims of Plaintiffs appear to arise from the same practices giving rise to the claims of the class members. The legal theories being advanced and the reliefs being sought are the same for the named Plaintiffs and the putative class members. Specifically, Plaintiff Nelson currently has a case pending before the Mayor's Court and awaits trial of a criminal or traffic offense as the putative class members in Class A. Plaintiff Richardson is currently a participant in the Deferred Prosecution Program as the putative class members in Class B and its sub-classes. However, there are questions of factual differences between the financial circumstances of named Plaintiffs and each putative class member, potentially leading to atypical results.

### (d) Adequacy of Representation

To satisfy the adequacy of representation prong, a plaintiff must show that the representative parties will fairly and adequately protect the interests of the class. *See* FED. R. CIV. P. 23(a)(4). This Court previously explained that the adequacy requirement "mandates inquiry into: (1) [the] zeal and competence of [the] representative's counsel; and (2) [the] willingness and

ability of [the] representative to take [an] active role in and control litigation and to protect [the] interests of absentees." *J.D. v. Nagin*, 255 F.R.D. 406, 415 (E.D. La. 2009)(citing *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001)). Further, an "adequate representative" "will vigorously prosecute the interests of the class through qualified counsel" and will "have common interests with the unnamed members of the class." *Id.* (citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973)). Thus, "there must be no significant conflict of interest between the named plaintiffs and the absent class members." *Id.*

Plaintiffs have satisfied the adequacy of representation prong. Plaintiffs are represented by counsel with experience in civil rights cases. *See* Rec. Doc. Nos 2-2 & 2-3. Their experience establishes an ability to litigate this case and protect the interests of class members. Plaintiffs do not at this moment appear to have any conflict of interests with the putative class members. Plaintiffs seek the same remedies that flow from the same event as the putative class members. Defendants are mistaken in their argument that Plaintiff Richardson is not an adequate representative for Class B and its sub-classes as the class members in that class, like

Plaintiff Richardson, have claims that arise from their inability to afford fines.[5]

### 2. Fed. R. Civ. P. 23(b)

After satisfying the four prerequisites of Rule 23(a), the case may be maintained as a class action if a plaintiff shows that their case fits into one of the three categories listed in Rule 23(b). Specifically, the case must be one in which (1) prosecuting separate actions would create a risk of inconsistency or impairment of interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions common to the class predominate over any questions affecting individual members and that class action is superior to other adjudicating methods. *See* FED. R. CIV. P. 23(b)(1)-(3).

"Rule 23(b)(2)'s focus on injunctive and declaratory relief presumes a class best described as a homogenous and cohesive group with few conflicting interests among its members. Class certification centers on the defendants' alleged unlawful conduct, not on individual injury." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012). In other words, "the defendant's actions or refusal to

---

[5] Defendants contend that Plaintiffs must split Class B into more than two sub-classes and find representatives for those classes. *See* Rec. Doc. 50 at 15-16.

act are generally applicable to the class as a whole . . . ." *Id.* at 365 (citing *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000)). "Decades ago, the Fifth Circuit explained that because it is not necessary for class members to "be so clearly identified that any member can be presently ascertained, the 23(b)(2) class action is an effective weapon for an across-the-board attack against systematic abuse. Indeed, its usefulness in the civil rights area was foreseen by the drafters of the revised rule." *Jones*, 519 F.2d at 1100 (footnote and internal citations omitted).

Plaintiffs "seek [injunctive and declaratory] relief as to Defendants' unconstitutionally biased adjudications and wealth-based [D]eferred [P]rosecution [P]rogram." Rec. Doc. 2-1 at 12. Plaintiffs' cause of action is one in which the Defendants are, allegedly, carrying out practices in a common fashion to all putative class members. *See Casa Orlando Apartments, Ltd. V. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010)("23(b)(2) requires common behavior by the defendant towards the class members). The predominate prong of 23(b)(3) may not be satisfied if each putative class member's financial resources requires calculation to assess their ability to afford deferred program costs and fees.[6] If the Mayor's Court had a written policy or

---

[6] Defendants contend that declaratory judgment without class certification is proper. *See* Rec Doc.55 at 14-15 But, Plaintiffs contend that that would be insufficient as it would only stop the practices against the two named

consistent practice to assess financial ability and proceed within constitutional boundaries of due process and equal protection, this action may no longer be necessary.

### B. *Younger* Abstention

*Younger* abstention applies to suits for injunctive and declaratory relief and to "three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016). "If state proceedings fit into one of these categories, a court appropriately consider[s] . . . whether there is (1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provides an adequate opportunity to raise federal challenges." *Id*.

Plaintiff Nelson, as she alleges, "currently has a case pending before the Mayor's Court and awaits trial of a criminal and/or traffic offense." Plaintiff Richardson is participating in the Mayor's Court's Deferred Prosecution Program, which the Defendant refers to as a federal proceeding. The City of Gretna

---

Plaintiffs. *See* Rec Doc. 51 at 6. However, a declaration on the individual claims that finds constitutional violations in the set structure and typical operations of the Mayor's Court will have application beyond the named Plaintiffs.

has a state interest in enforcing criminal and traffic offenses to ensure the welfare of its citizens. Plaintiffs are able to raise their constitutional challenge in a state or federal court district court where available remedies exist in due course.

Without more and given the history of this litigation, including this court's involvement, it would not be fair at this stage to invoke the *Younger* abstention. Accordingly,

**IT IS ORDERED** that Plaintiffs' "Motion to Certify Class" (Rec. Doc. 2) is **DISMISSED WITHOUT PREJUDICE** to give the parties additional time to conduct discovery and pursue, in good faith, an amicable resolution. It appears that this case has core issues that preclude certification of a class, including individualized calculations of a potential claimant's financial ability to pay associated costs for deferred prosecution and workable alternatives to same. Those and related issues should be collectively considered by all parties with assistance of counsel. To that end, parties shall jointly propose agreeable status conference dates to meet with the undersigned **no later than October 23, 2018.**

New Orleans, Louisiana, this 25th day of September, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE