UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TAMARA G. NELSON, ET AL., | * | CIVIL ACTION |
| *Plaintiffs* | * | NO. 17-14581 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| BELINDA C. CONSTANT, ET AL. | * | MAGISTRATE JUDGE |
| *Defendants* | * | JANIS VAN MEERVELD |
| | * | |
| | * | |

ORDER AND REASONS

Before the Court is plaintiff Timothea Richardson's Motion to Certify a Settlement Class (Rec. Doc. 142) and Motion for Preliminary Approval of Proposed Settlement (Rec. Doc. 143). For the following reasons, the Motions are GRANTED.

Background

Plaintiffs filed this lawsuit to correct what they describe as egregious Due Process and Equal Protection violations occurring at the Mayor's Court of the City of Gretna. The plaintiffs' Due Process claims were dismissed on summary judgment. (Rec. Doc. 131). Plaintiff Timothea Richardson's Equal Protection claims remain. She challenges the constitutionality of the Deferred Prosecution Program, which offers arrestees accused of violating a municipal ordinance the opportunity to have their charges dismissed in exchange for an agreement to pay a fine that is typically less than the fine upon a finding of guilt but does not offer an alternative for those who cannot pay the program's fees.

The parties have been negotiating the settlement of the Equal Protection claims for a long time. Defendants initiated settlement discussions early in the litigation, prior to any dispositive rulings by the court. A settlement conference was held before the undersigned magistrate judge on

March 28, 2019. Although that settlement conference was unsuccessful, the parties continued to negotiate and eventually reached an agreement. In furtherance thereof, the plaintiff filed the present motions to certify a settlement class and for preliminary approval of the settlement agreement.[1] The motions are not opposed; Defendants and Intervenors have filed a response memorandum indicating that they believe the settlement is fair, that it was negotiated at arms-length, and that the proposed notice is adequate and cost-effective. They reserve their right to object to plaintiff's counsel's forthcoming motion for attorneys' fees, and they clarify that they are not admitting liability or that the Deferred Prosecution Program is unconstitutional.

> Plaintiff proposes the following class and subclasses:
>
> All persons who in the past year were denied participation in, terminated from, or threatened with termination from the deferred prosecution program due to their inability to pay program fees.
>
> Subclass A: all persons with unpaid Deferred Prosecution Program fees on a case filed in the Gretna Mayor's Court on or before December 31, 2017.
>
> Subclass B: all persons terminated from the Deferred Prosecution Program from June 1, 2015, to present, who forfeited payments to the program, were later convicted, paid fines and fees upon conviction, but received no credit for the funds forfeited to the Deferred Prosecution Program.
>
> Subclass C: all persons terminated from the Deferred Prosecution Program on or after January 1, 2018, for failure to pay and are either (i) awaiting trial or (ii) have failed to make their final payment as scheduled or have been attached for failure to appear.

---

[1] Upon noticing a discrepancy between the class definition as stated in the Memorandum in Support of Motion to Certify a Settlement Class and the Settlement Agreement, the court notified the parties. Revisions were negotiated and the plaintiff filed a new Memorandum in Support of Motion to Certify Settlement Class and new exhibits to the Motion for Preliminary Approval of Settlement. These revised documents have substituted the originals and are the documents now considered by the court. As discussed below, further revisions were made to the proposed notice forms, and those too have been substituted for the earlier versions.

Named plaintiff Timothea N. Richardson seeks to represent the class. And her present counsel, attorneys from the Roderick and Solange MacArthur Justice Center in New Orleans ("MacArthur Justice Center"), are the proposed class counsel.

The proposed settlement purports to bind the plaintiff class; the City of Gretna, the Mayor of Gretna, the Magistrates of the Gretna Mayor's Court, and the City Prosecutor (collectively the "Defendants"); and, to the extent the obligations are applicable, the Clerk of Court of the Gretna Mayor's Court, and the Gretna Chief of Police (collectively "Intervenors") who intervened in this action solely for the purposes of settlement. The proposed agreement requires that the Defendants develop a written admissions policy for the Deferred Prosecution Program. No applicant can be denied because of their inability to pay. Defendants are required to waive the fees for all Deferred Prosecution Program participants deemed indigent or may impose certain conditions in lieu of fees, such as community service, job training, substance abuse treatment, education, etc. Alternative conditions must have a rational relation to the alleged offense. Mental or physical incapacity to fulfill a nonfinancial condition or an inability to pay for the nonfinancial condition cannot be considered a cause for termination from the program. The settlement agreement also requires participants be allowed a period of time to complete their nonfinancial conditions that is no less than the time given to paying participants to pay their fees. Defendants cannot impose longer "probation" periods upon indigent applicants in lieu of participation fees. Defendants are required to develop a Deferred Prosecution Program application form (1) requiring an applicant claiming inability to pay to attest that the applicant cannot afford the payment of the deferred prosecution fee within a year's time and (2) soliciting details of the applicant's financial situation to help the City Prosecutor make reliable determinations regarding the ability to pay, including in installment payments, over time. The settlement agreement offers suggested information that can

be solicited (e.g., income, employment history, money owed, assets owned, dependents) and requires Defendants to confer with plaintiffs in the development of the application and to provide them with a draft and opportunity to comment prior to the implementation. The settlement agreement requires that an applicant presenting a valid SNAP qualification certificate or other appropriate, acceptable documentation of financial hardship[2] will not be required to comply with the form requirements discussed above. For those applicants who seek a monthly payment plan but are not determined to be indigent and entitled to a waiver of fees, their monthly payment cannot exceed the applicant's average gross daily income for an eight-hour work day.

The settlement agreement also provides certain benefits for each of the subclasses. Defendants must waive all unpaid fees to the Deferred Prosecution Program in all accounts for cases filed in the Mayor's Court on or before December 31, 2017 and shall consider those participants to have successfully completed the Deferred Prosecution Program and shall dismiss the charges. In case of nonpayment occurring after entry into the settlement agreement, Defendants must inquire if the nonpayment was willful before terminating the person from the program. Defendants must identify all participants in the Deferred Prosecution Program who were terminated from the program for failure to pay fees from June 1, 2015 through the present and who forfeited payments, were later convicted, and paid fines and fees upon conviction but received no credit for funds paid under the Deferred Prosecution Program. For those participants, the Defendants must refund the amount paid into the Deferred Prosecution Program that was forfeited without a credit. All participants who were terminated from the program on or after January 1, 2018, and are awaiting trial, failed to make their final payment as scheduled, or have been attached

---

[2] Per the definitions, "substantial financial hardship" is presumed when an applicant receives public assistance, including through SNAP or other government assistance programs like Medicaid and Supplemental Security Income.

for failure to appear shall be given a choice to be placed back into the Deferred Prosecution Program upon appearance at the Mayor's Court within nine months of the Court's approval of the settlement agreement. The Defendants are required to provide general notice of this option through postings in the Clerk of Court's office and the Mayor's court and including written notice of the option in all communications from the Mayor's Court. To the extent any such terminated participant made payments while participating in the Deferred Prosecution Program, they are entitled to a full credit of those payments either after re-enrollment into the Deferred Prosecution Program or towards any future fine or fee if the case is adjudicated, or to a refund if the case is dismissed.

The settlement agreement requires notification of the availability of alternatives for low income people in the Deferred Prosecution Program agreement with participants, on the City's online payment portal, and in any termination notices, default notices, payment receipts, or payment plans produced to program participants by the City Prosecutor, Clerk of Court, or other Defendants. The settlement agreement further requires that for a period of three years, the Defendants produce to the plaintiffs a monthly report identifying the total number of applicants, the number of applicants accepted, the number of applicants denied participation, and the number of indigency waivers sought.

In exchange, the plaintiffs agree to waive all claims described in the Complaint and First Amended Complaint.

<u>Law and Analysis</u>

*1. Legal Standards*

    *a. Preliminary Approval of Settlement*

Federal Rule of Civil Procedure 23(e) permits the settlement of class actions only with the court's approval, following notice to the class. Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." <u>In re Shell Oil Refinery</u>, 155 F.R.D. 552, 555 (E.D. La. 1993). At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. <u>In re Chinese-Manufactured Drywall Prod. Liab. Litig.</u>, No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). "However, the standards for granting preliminary approval are not as stringent as those applied to a motion for final approval: 'The questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.'" <u>In re Oil Spill by the Oil Rig "Deepwater Horizon" on the Gulf of Mexico, on April 20, 2010</u>, No. 10-md-2179, ECF # 6419, at 12 (E.D. La. May 2, 2012) (quoting <u>In re OCA, Inc. Securities & Derivative Litig.</u>, No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008)).

In determining whether the settlement is fair, reasonable, and adequate, Rule 23(e) instructs the court to consider:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In making this assessment, courts in the Fifth Circuit typically consider the following factors: "(1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members." In re Chinese-Manufactured Drywall Prod. Liab. Litig., 424 F. Supp. 3d 456, 485 (E.D. La. 2020).

### b.   Certification of a Settlement Class

Here, a class has not yet been certified. When considering whether to certify a class solely for the purpose of settlement, the court must carefully assess whether the requirements of Federal Rule of Civil Procedure 23 (except the question of whether the case, if tried, would present intractable management problems) have been satisfied. Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 620 (1997). Importantly, the fairness inquiry under Rule 23(e) discussed above is a separate and additional requirement that does not replace the determination of whether class certification is appropriate. Id. at 620-21.

The court will certify a class action under Rule 23 if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The rule is designed "to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and

adequately protect class interests."' In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. 11-CV-1363, 2012 WL 92498, at *8 (E.D. La. Jan. 10, 2012)

Additionally, one of the Rule 23(b) factors must be satisfied. Here, plaintiff seeks to certify a class under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

2. *Analysis*

    a. *Proposed Class*

        i. *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To demonstrate numerosity, the [plaintiffs] must establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'" In re Vioxx Prod. Liab. Litig., 239 F.R.D. 450, 459 (E.D. La. 2006) (quoting Pederson v. Louisiana State Univ., 213 F.3d 858, 868 (5th Cir. 2000)). However, plaintiffs are not required to allege the exact number of proposed class members. 1 Newberg on Class Actions § 3:13 (5th ed.). The Fifth Circuit has noted that a class of 20 individuals is "much too small to meet the numerosity requirement." Boykin v. Georgia-Pac. Corp., 706 F.2d 1384, 1386 (5th Cir. 1983). A class of 100 to 150 members, however, "is within the range that generally satisfied the numerosity requirement." Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999) (citing Newberg on Class Actions for its suggestion that a class of more than 40 "should raise a presumption that joinder is impracticable"); see 1 Newberg on Class Actions § 3:12 (5th ed.) ("As a general guideline, however, a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of

joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.") (footnotes omitted). It should be noted that "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a) (1)." Jones v. Diamond, 519 F.2d 1090, 1100 (5th Cir. 1975), abrogated on other grounds by Gardner v. Westinghouse Broad. Co., 437 U.S. 478, 98 S. Ct. 2451, 57 L. Ed. 2d 364 (1978). "Smaller classes are less objectionable where . . . the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." Id.

Here, the annual number of participants in the Deferred Prosecution Program ranged from 1,633 to 1,851 between 2015 and 2018. (Rec. Doc. 112-2, at 4). Plaintiff estimates there are "dozens, if not hundreds, of class members who have been impacted by the conditioning of [the] deferred prosecution program on money payments." (Rec. Doc. 142-1, at 3). Defendants represent that they have identified approximately 60 individuals who would receive actual refunds pursuant to the settlement agreement. (Rec. Doc. 144, at 4). The parties estimate 60-70 participants who were terminated for non-payment on or after January 1, 2018, and would be eligible for a credit for payments made. (Rec. Doc. 143-11). These two groups are only a portion of the potential class members. Plaintiff points out that as long as the Deferred Prosecution Program remains in effect without the changes dictated by the proposed settlement, there is a future stream of putative class members who will suffer the same injury. Indeed, the primary relief sought is injunctive.

The court finds that the numerosity prong has been met here. This is a civil rights class action where plaintiff is seeking injunctive relief for past, present, and future class members of the type contemplated by the Jones decision. The number of class members is in excess of the 60 who would receive refunds and 60-70 who would be eligible for a credit, because other class members

will benefit from the injunctive relief. A number of additional class members will have their unpaid fees waived. And an additional number of class members will benefit from the program changes providing for extended periods for payment, payment plans, and conditions in lieu of fees. The individual litigation of past and an unknown number of future participants makes joinder here impracticable.

### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." In re Deepwater Horizon, 739 F.3d 790, 810 (5th Cir. 2014). Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50, (2011). "Their claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350. Yet "the legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." In re Deepwater Horizon, 739 F.3d at 810–11.

Here, the plaintiff submits that this litigation presents the following common issues of fact and law:

- Are alternatives to monetary payments accepted by the City Prosecutor for participation in the deferred prosecution program?

- Does termination from the Deferred Prosecution Program result in forfeiture of all funds previously paid into the program?

10

- Does the availability of the Deferred Prosecution Program only to those who can afford it violate the Equal Protection clause of the Constitution?

The preliminary, factual questions lay the groundwork for determining the final, legal question. The final question of constitutionality is the ultimate one and is a common contention that is capable of classwide resolution, and thus satisfies the commonality requirement.

### iii.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." Stirman v. Exxon Corp., 280 F.3d 554, 562 (5th Cir. 2002) (quoting James v. City of Dallas, Tex., 254 F.3d 551, 571 (5th Cir. 2001)).

The plaintiff submits that her claims are typical of the class because she was subjected to the practices alleged in the Complaint and suffered the exact same constitutional violations that all other respective class members suffered. The court agrees that the named plaintiff's claims are typical of the claims of the class.

### iv.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement involves consideration of "the zeal and competence of the representative[s'] counsel," "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of the absentees," and the existence of any "conflicts of interest between the named plaintiffs and the

class they seek to represent." <u>Feder v. Elec. Data Sys. Corp.</u>, 429 F.3d 125, 130 (5th Cir. 2005) (quoting <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, 479-80 (5th Cir. 2001)).

Named plaintiff Richardson was a participant in the Deferred Prosecution Program at the time of filing and was threatened with termination from the program if she failed to make payments. She was not given a nonfinancial option. She argues that as a result, she has common interests with all the others who were denied participation, terminated from, or threatened with termination from the Program. She concedes that she no longer has an open case in the Mayor's Court, but insists that can still as a representative of this Class. The United States Supreme Court has observed that

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

<u>Sosna v. Iowa</u>, 419 U.S. 393, 402 n.11 (1975). For example, in <u>Gerstein v. Pugh</u>, the Supreme Court found that a class action asking whether "a person arrested and held for trial under a prosecutor's information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty" was not mooted when the named plaintiffs were no longer in pretrial detention. 420 U.S. 103, 105, 111 n.11 (1975). The Court observed that:

> Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."

<u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975). Similarly here, the court finds that the fact that Richardson's own case is now closed does not moot this action because participation in the

Deferred Prosecution Program is temporary and she and others similarly situated could suffer repeated deprivations. As a named plaintiff, Richardson continues to have an interest in redressing the threats she experienced when in the Program. There is no evidence to indicate she has a conflict of interest with the other class members or any reason to believe she has not or will not take an active role to protect the interests of absentees. The court finds she is an adequate representative of the class.

Richardson is represented by attorneys from the MacArthur Justice Center, which is a non-profit public interest law firm. Attorney Jim Craig has practiced in federal and state courts in Mississippi and Louisiana for over thirty years and has litigated multiple complex civil matters, including class actions. Attorney Eric Foley served as a federal judicial clerk for two years before beginning his practice in Louisiana in 2011. He has litigated civil rights cases at the trial and appellate stages in state and federal court. Counsel assert they have knowledge of the details of Defendants' practices and the relevant constitutional history and statutory law. The court finds that counsel is competent to represent the class and there is no indication they have or will fail to do so in accordance with their professional obligations.

### v. Rule 23(b)

As noted above, to maintain a class action, it must fall into one of the three categories described in Rule 23(b). Plaintiff here invokes Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) certification is appropriate where plaintiffs seek declaratory or injunctive relief for class-wide injury. Such certification is particularly well-suited for civil rights actions where 'a party is charged with discriminating unlawfully against a

class.'" In re Veneman, 309 F.3d 789, 792 (D.C. Cir. 2002) (quoting Fed. R. Civ. P. 23(b)(2) advisory committee comments to 1966 amendment). The Fifth Circuit has required that "(1) the 'class members must have been harmed in essentially the same way' and (2) 'the injunctive relief sought must be specific.'" M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 845 (5th Cir. 2012) (quoting Maldonado v. Ochsner Clinic Found., 493 F.3d 521, 524 (5th Cir. 2007)) (internal citations omitted). Further, "the relief sought must perforce affect the entire class at once." Id. (quoting Wal-Mart, 564 U.S. at 361–62 (2011)). "Rule 23(b)(2) certification is warranted if the following three requirements are satisfied: '(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific.'" Ward v. Hellerstedt, 753 F. App'x 236, 249 (5th Cir. 2018) (quoting Yates v. Collier, 868 F.3d 354, 366 (5th Cir. 2017)).

Here, plaintiff alleges that those who were denied participation in or terminated from the Deferred Prosecution Program due to their inability to make monetary payments were subjected to criminal liability solely because they are poor in violation of the Equal Protection Clause. The Complaint seeks injunctive relief to (1) require the Defendants to provide alternatives so that a participant cannot be excluded or terminated for an inability to pay and (2) for those who paid money into the program but were terminated for failure to pay and subsequently convicted and fined, to require the Defendants to refund money paid. The requested injunctive relief seeks broad programmatic changes that would affect the entire class at once. To the extent the request for refunds can be construed as monetary damages, the injunctive relief predominates because the injunctive relief is more extensive in its scope and in the class members it will affect.

### vi. Conclusion on Class Certification

Having found each of the requirements to certify a class have been met, the court finds it appropriate to certify a settlement class at this time. The class will be defined as follows:

All persons who in the past year were denied participation in, terminated from, or threatened with termination from the deferred prosecution program due to their inability to pay program fees.

Subclass A: all persons with unpaid Deferred Prosecution Program fees on a case filed in the Gretna Mayor's Court on or before December 31, 2017.

Subclass B: all persons terminated from the Deferred Prosecution Program from June 1, 2015, to present, who forfeited payments to the program, were later convicted, paid fines and fees upon conviction, but received no credit for the funds forfeited to the Deferred Prosecution Program.

Subclass C: all persons terminated from the Deferred Prosecution Program on or after January 1, 2018, for failure to pay and are either (i) awaiting trial or (ii) have failed to make their final payment as scheduled or have been attached for failure to appear.

### b. The Nelson Settlement

The court now addresses whether the proposed settlement is fair, reasonable, and adequate as required by Rule 23(e). The court finds the Rule 23(e)(2) factors have been satisfied. Plaintiff's counsel has provided adequate representation. They have been involved throughout the litigation and as discussed above, they are experienced litigators.

The proposed settlement was negotiated at arm's length. Counsel represents there are no side agreements and adds there is no damages award from which counsel might seek fees from the putative representative plaintiff and they have no agreement with the plaintiff for attorney's fees.[3]

---

[3] Counsel intends to request attorneys' fees under 42 U.S.C. §1988, but this will not affect the plaintiff's recovery and will be at the discretion of the court.

At this stage, the proposed relief appears to be adequate. The settlement agreement addresses plaintiff's main complaint in detail by requiring changes to the Deferred Prosecution Program that will ensure that participants are not excluded based on an inability to pay. It also provides a refund of fees to class members who were terminated from the program, convicted, and fined without being given a credit for the program fees they had already paid. It further requires Defendants to waive all unpaid fees to the Deferred Prosecution Program in all accounts for cases filed in the Mayor's Court on or before December 31, 2017, resulting in dismissal of such cases. And it provides an option to be put back into the program for persons terminated on or after January 1, 2018 and who are awaiting trial or have failed to make a payment as scheduled or have been attached for failure to appear. The court finds that the proposed settlement appears to fully remedy the alleged constitutional violations.

Further, considering the scope of relief, the court finds that the proposed settlement outweighs the inherent costs, risks, and delay of trial and appeal. The relief is primarily injunctive, but as to the refunds, the court finds the method of distributing relief to the class appears to be effective—the Defendants have already identified the 60 participants who would be entitled to a refund pursuant to the settlement terms. They will mail class members instructions for how to claim their refunds. If the refunds are unclaimed after 12 months, the refund will be forwarded to the Louisiana Treasury Department's unclaimed property division.

There is no attorneys fee proposal or Rule 23(e)(3) to be considered.[4]

Finally, the court also finds that the agreement appears to be equitable. An attorneys' fee award is not part of the settlement agreement and there are no side agreements. The injunctive relief is the same across the class. Although some class members will receive refunds, the

---

[4] See footnote 3.

distinction is based on whether a class member forfeited funds. Only class members who have not forfeited funds will not receive a refund. The court finds that the class members are treated equitably relative to each other.

Turning to the Fifth Circuit's factors, there is no evidence of fraud or collusion. The likely expense and duration of the litigation through appeal weighs in favor of settling now. As to the stage of litigation, the parties have engaged in extensive discovery, including the deposition of nine participants and stakeholders in the Deferred Prosecution Program. Plaintiff's counsel also obtained documents through public records requests and propounded written discovery. The court finds plaintiff is sufficiently informed to assess the parties' positions and determine that the settlement is in the best interest of the putative class. The court next considers the plaintiff's probability of success and the range of possible recovery. Although the proposed settlement does not include a declaration of unconstitutionality, it fully remedies the alleged Equal Protection violations by re-instating participants who were terminated for an inability to pay and providing a process to ensure that no participants can be terminated for inability to pay. Plaintiff's counsel is confident in their ability to succeed at trial but recognizes the inherent risk of litigation. Finally, class counsel concludes that the proposed settlement is fair, adequate, and reasonable to all class members. The settlement agreement was explained to putative class representative Ms. Richardson, and she accepts it as fair, adequate, and reasonable.

The court finds that all the factors weigh in favor of finding the settlement fair, adequate and reasonable. Accordingly, at this preliminary stage, the court finds it appropriate to provide notice of the proposed settlement to the proposed class.

### c.   The Proposed Notice

Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice must also satisfy the Constitution's due process requirements by being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 3 Newberg on Class Actions § 8:15 (5th ed.) (quoting Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 629 (6th Cir. 2007)). One frequent question is whether the settlement notice must be individualized. See id. In the case of Rule 23(b)(2) class settlement, individualized notice is not required, but may be ordered by the court. Id.

Plaintiff proposes to provide individual notice to the members of subclasses B and C who have been identified as eligible for a refund or a credit. Plaintiff has attached a draft of the proposed direct mailing.[5] It provides a cover sheet with basic information about the proposed settlement and pages with additional details. The form explains how a class member can file objections or appear at the hearing to voice an objection.[6] The form provides a link to a website that will be hosted on an independent domain, www.GretnaDeferredProsecutionProgram.com, which will provide information about the lawsuit and the proposed settlement that is similar to that provided in the proposed direct mailing. The website will also provide access to all relevant documents in the case

---

[5] The court provided feedback to the parties by email and during a telephone status conference and the forms presently under consideration were submitted by the plaintiffs via a motion to substitute filed September 2, 2020.

[6] Due to concerns related to the COVID-19 pandemic, the hearing will be held by videoconference. Putative class members will receive instructions to participate in the hearing automatically if they file written objections or they can contact the court via email or plaintiff's counsel via telephone to be put on the distribution list for the videoconference instructions. The proposed notices reflect these options.

including the complaint, the proposed settlement, this order and reasons, and, once it is filed, counsel's Motion for Attorney's Fees.[7]

As to the remaining class members, plaintiff proposes generalized notice. This would include individuals that have cases currently pending before the Mayor's court and future class members. Plaintiff proposes the use of targeted ads (based on zip code)[8] on Facebook for a period of at least seven days; links from the City of Gretna's website, the Gretna Police Department's website, and the portal for online payments to the City; and flyers to be displayed at the Gretna Clerk of Court's office and in the courtroom during settings of Mayor's Court.[9] Plaintiff includes a copy of the proposed notices. The parties submit that notice in a print publication would be a relatively ineffective yet costly means of providing general notice. The standard rate for a quarter page print advertisement in the Advocate or Times Picayune is $2,100 per day. The daily rate for the proposed Facebook advertisement is $71.42.

The court has reviewed the proposed individualized notice (Exhibit 2), the proposed website (Exhibit 3), the proposed social media advertisement (Exhibit 4), the proposed flyer to be linked on the City of Gretna's websites and to be physically posted (Exhibit 5). The notices are in plain, easily understood language and provide information about the lawsuit, the benefits of settlement, how to object, how to participate in the hearing, and how to obtain additional information (by visiting the informational website or calling plaintiff's counsel). The individualized notice and the website include additional information about the lawsuit, the settlement, the Deferred Prosecution Program, and a summary of who qualifies as a class member.

---

[7] Plaintiff has also submitted screenshots of the proposed website for the court's review.
[8] The zip codes plaintiff proposes to use would include the residences of 83% of those with charges filed in the Mayor's Court.
[9] During a status conference to discuss the logistics of the fairness hearing, counsel for the Defendants reported that at the time, Mayor's Court was being held in an alternate location due to the COVID-19 pandemic. By posting the notice in the courtroom, it is intended that the notice will be posted wherever Mayor's Court is being held.

The court finds the content of the proposed notice satisfies Due Process and the reasonableness requirement of Rule 23(e)(1).

With regard to the method of notice, the court finds that as to those class members who will be eligible for a refund or a credit, the proposed individualized notice via U.S. Mail satisfies Due Process and the reasonableness requirement of Rule 23(e)(1). Further, as to those current class members who will be receiving a waiver of fees owed or who will be affected only by the availability of new procedures ensuring that inability to pay will not prevent participation in or result in termination from the Deferred Prosecution Program, the court finds generalized notice satisfies Due Process and the reasonableness requirement of Rule 23(e)(1). The number of class members is unknowable and would be some subset of the 1,633 to 1,851 annual participants over a period of years. The proposed use of Facebook, posting on the Defendants' websites (including the payment portal), and flyers to be displayed at the Gretna Clerk of Court's office and in council chambers during settings of the Mayor's Court will effectively reach the putative class members. There is no indication that using a print publication would be more effective in reaching class members;[10] and at a cost of over 25 times the cost of the Facebook advertisements, the court finds print publication would not be cost effective.

Rule 23(h) requires that notice of a motion for attorneys' fees must be "directed to class members in a reasonable manner." Plaintiff's counsel notes that the proposed individualized notice and the website include a statement notifying the putative class of the planned petition for attorneys' fees. The notice and website clarify that any award will have no effect on the class

---

[10] E.g., Robert H. Klonoff, Mark Herrmann, Bradley W. Harrison, <u>Making Class Actions Work: The Untapped Potential of the Internet</u>, 13 J. Internet L. 1, 14 (2009). ("The decline of newspaper readership exacerbates the long-recognized problem that absent class members are not likely to encounter a legal notice published in a newspaper, even if they read the paper.").

members' recovery. Plaintiff's counsel also reports that the petition will be made available for class members' review on the informational website hosted at www.GretnaDeferredProsecutionProgram.com, therefore it will also be available to those receiving generalized notice. The court finds this is sufficient to satisfy Rule 23(h). Below, the court sets a deadline by which plaintiff's counsel shall file the request for fees so that the date can be included in the notice.

Finally, the parties' settlement agreement does not address who will be responsible for the cost of providing notice. Plaintiff submits that Defendants should bear this burden because there is no settlement fund or award of damages and there is no agreement on attorneys' fees that could fund the settlement notice. Plaintiff's counsel adds that they are a nonprofit law firm. Defendants have not agreed to bear the cost, but they do not actively oppose this proposal. Instead, they urge the court to consider the cost of notice and they submit that notice via social media and the proposed physical notice posting is the most cost-effective method of generalized notice. The court has done so above. The court finds it appropriate for Defendants to bear the cost of providing individualized notice, providing publication via Facebook, posting physical copies of the flyers, posting links to the flyer on their websites, hosting fees related to the website www.GretnaDeferredProseuctionProgram.com, and web developer costs related to the website www.GretnaDeferredProseuctionProgram.com to the extent performed by an independent contractor (i.e., not by an employee of the plaintiff's counsel).

<u>Conclusion</u>

For the foregoing reasons, the court rules as follows:

1. On a preliminary basis for settlement purposes only, the class is certified under Rule 23(b)(2) and shall consist of:

All persons who in the past year were denied participation in, terminated from, or threatened with termination from the deferred prosecution program due to their inability to pay program fees.

Subclass A: all persons with unpaid Deferred Prosecution Program fees on a case filed in the Gretna Mayor's Court on or before December 31, 2017.

Subclass B: all persons terminated from the Deferred Prosecution Program from June 1, 2015, to present, who forfeited payments to the program, were later convicted, paid fines and fees upon conviction, but received no credit for the funds forfeited to the Deferred Prosecution Program.

Subclass C: all persons terminated from the Deferred Prosecution Program on or after January 1, 2018, for failure to pay and are either (i) awaiting trial or (ii) have failed to make their final payment as scheduled or have been attached for failure to appear.

2. The court preliminarily approves the settlement agreement and finds it appropriate to send notice to the class members and to conduct a hearing pursuant to Federal Rule of Civil Procedure 23(e).

3. The Fairness Hearing is hereby scheduled for **December 4, 2020**, at 12:00 p.m.. before Magistrate Judge Janis van Meerveld, **via videoconference**, to consider the fairness, reasonableness, and adequacy of the Settlement under Federal Rule of Civil Procedure 23(e)(2) and to determine whether a Final Order and Judgment should be entered.

   a. Putative class members shall have until **November 6, 2020**, to file a written statement of objection with the court.

   b. If class members have filed objections to the proposed class settlement, each party may file supplemental briefing. Such briefing shall be due **November 20, 2020**.

4.  The court approves the form and content of the Notices, substantially in the form of Exhibits 2, 3, 4, and 5 to Plaintiff's Motion as satisfying the requirements of Rule 23(e)(1) and due process.

5.  Notice shall be distributed as proposed on or before **September 4, 2020**.

6.  Defendants shall bear the cost of providing individualized notice, providing publication via Facebook, posting physical copies of the flyers, posting links to the flyer on their websites, hosting fees related to the website www.GretnaDeferredProseuctionProgram.com, and web developer costs related to the website www.GretnaDeferredProseuctionProgram.com to the extent performed by an independent contractor (i.e., not by an employee of the plaintiff's counsel).

7.  The court preliminarily and conditionally appoints Timothea Richardson as class representative.

8.  The court preliminarily and conditionally appoints the Roderick and Solange MacArthur Justice Center in New Orleans as class counsel.

9.  Any Petition for Attorneys' Fees shall be filed by **September 4, 2020**.


New Orleans, Louisiana, this 2nd day of September, 2020.

Janis van Meerveld
United States Magistrate Judge

23