UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TAMARA G. NELSON, ET AL., | * | CIVIL ACTION |
| *Plaintiffs* | * | NO. 17-14581 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| BELINDA C. CONSTANT, ET AL. | * | MAGISTRATE JUDGE |
| *Defendants* | * | JANIS VAN MEERVELD |
| | * | |
| | * | |

ORDER AND REASONS

On September 3, 2020, the undersigned granted plaintiff Timothea Richardson's Motion to Certify a Settlement Class and Motion for Preliminary Approval of Proposed Settlement. (Rec. Doc. 155). After notice of the proposed settlement was issued, a Fairness Hearing was held on December 4, 2020, to consider whether the proposed settlement is fair, reasonable, and adequate. For the following reasons, the Court finds that the proposed settlement is fair, reasonable, and adequate and hereby orders that the settlement is APPROVED. The court further orders that the court's preliminary certification of a settlement class is hereby approved and finalized.

Background

1. *Procedural Background*

Plaintiffs filed this lawsuit to correct what they describe as egregious Due Process and Equal Protection violations occurring at the Mayor's Court of the City of Gretna. The plaintiffs' Due Process claims were dismissed on summary judgment. (Rec. Doc. 131). Plaintiff Timothea Richardson's Equal Protection claims remain. She challenges the constitutionality of the Deferred Prosecution Program, which offers arrestees accused of violating a municipal ordinance the opportunity to have their charges dismissed in exchange for an agreement to pay a fine that is typically less than the fine upon a finding of guilt but does not offer an alternative for those who

1

cannot pay the program's fees. The parties have been negotiating the settlement of the Equal Protection claims for a long time. Defendants initiated settlement discussions early in the litigation, prior to any dispositive rulings by the court. A settlement conference was held before the undersigned magistrate judge on March 28, 2019. Although that settlement conference was unsuccessful, the parties continued to negotiate and eventually reached an agreement. In furtherance thereof, the plaintiff filed the motions to certify a settlement class and for preliminary approval of the settlement agreement. The motions were not opposed; Defendants[1] and Intervenors[2] filed a response memorandum indicating that they believe the settlement is fair, that it was negotiated at arms-length, and that the proposed notice would be adequate and cost-effective.[3]

The court granted the motions and preliminarily certified the following settlement class and subclasses:

> All persons who in the past year were denied participation in, terminated from, or threatened with termination from the deferred prosecution program due to their inability to pay program fees.

> Subclass A: all persons with unpaid Deferred Prosecution Program fees on a case filed in the Gretna Mayor's Court on or before December 31, 2017.

> Subclass B: all persons terminated from the Deferred Prosecution Program from June 1, 2015, to present, who forfeited payments to the program, were later convicted, paid fines and fees upon conviction, but received no credit for the funds forfeited to the Deferred Prosecution Program.

---

[1] The Defendants are Walter J. LeBlanc in his official capacity as City Prosecutor for the City of Gretna, the City of Gretna, Belinda C. Constant in her official capacity as Mayor of the City of Gretna, Raymond A. Osborn, Jr., in his official capacity as Magistrate of the Gretna Mayor's Court, and Olden C. Toups, Jr., in his official capacity as Magistrate of the Gretna Mayor's Court.

[2] Terri Brossette, in her official capacities as Clerk of the Gretna's Mayor's Court and Lieutenant of the Gretna Police Department and Arthur Lawson, Jr in his official capacities as Chief of Police and Marshal, were originally named defendants but plaintiffs' claims against the were dismissed. They intervened for purposes of participating in the settlement.

[3] They also reserved their right to object to plaintiffs' counsel's motion for attorneys' fees, and they clarified that they are not admitting liability or that the Deferred Prosecution Program is unconstitutional.

Subclass C: all persons terminated from the Deferred Prosecution Program on or after January 1, 2018, for failure to pay and are either (i) awaiting trial or (ii) have failed to make their final payment as scheduled or have been attached for failure to appear.

The court appointed named plaintiff Timothea N. Richardson to represent the class and her present counsel, attorneys from the Roderick and Solange MacArthur Justice Center in New Orleans ("MacArthur Justice Center") to serve as class counsel. The Court also preliminarily approved the settlement agreement and approved the sending of notice to the class members.

2. *Proposed Settlement*

The proposed settlement purports to bind the plaintiff class; the City of Gretna, the Mayor of Gretna, the Magistrates of the Gretna Mayor's Court, and the City Prosecutor (collectively the "Defendants"); and, to the extent the obligations are applicable, the Clerk of Court of the Gretna Mayor's Court, and the Gretna Chief of Police (collectively "Intervenors") who intervened in this action solely for the purposes of settlement. The proposed agreement requires that the Defendants develop a written admissions policy for the Deferred Prosecution Program. No applicant can be denied because of their inability to pay. Defendants are required to waive the fees for all Deferred Prosecution Program participants deemed indigent or may impose certain conditions in lieu of fees, such as community service, job training, substance abuse treatment, education, etc. Alternative conditions must have a rational relation to the alleged offense. Mental or physical incapacity to fulfill a nonfinancial condition or an inability to pay for the nonfinancial condition cannot be considered a cause for termination from the program. The settlement agreement also requires participants be allowed a period of time to complete their nonfinancial conditions that is no less than the time given to paying participants to pay their fees. Defendants cannot impose longer "probation" periods upon indigent applicants in lieu of participation fees. Defendants are

3

required to develop a Deferred Prosecution Program application form (1) requiring an applicant claiming inability to pay to attest that the applicant cannot afford the payment of the deferred prosecution fee within a year's time and (2) soliciting details of the applicant's financial situation to help the City Prosecutor make reliable determinations regarding the ability to pay, including in installment payments, over time. The settlement agreement offers suggested information that can be solicited (e.g., income, employment history, money owed, assets owned, dependents) and requires Defendants to confer with plaintiffs in the development of the application and to provide them with a draft and opportunity to comment prior to the implementation. The settlement agreement requires that an applicant presenting a valid SNAP qualification certificate or other appropriate, acceptable documentation of financial hardship[4] will not be required to comply with the form requirements discussed above. For those applicants who seek a monthly payment plan but are not determined to be indigent and entitled to a waiver of fees, their monthly payment cannot exceed the applicant's average gross daily income for an eight-hour workday.

The settlement agreement also provides certain benefits for each of the subclasses. Defendants must waive all unpaid fees to the Deferred Prosecution Program in all accounts for cases filed in the Mayor's Court on or before December 31, 2017 and shall consider those participants to have successfully completed the Deferred Prosecution Program and shall dismiss the charges.  In case of nonpayment occurring after entry into the settlement agreement, Defendants must inquire if the nonpayment was willful before terminating the person from the program. Defendants must identify all participants in the Deferred Prosecution Program who were terminated from the program for failure to pay fees from June 1, 2015 through the present and who

---

[4] Per the definitions, "substantial financial hardship" is presumed when an applicant receives public assistance, including through SNAP or other government assistance programs like Medicaid and Supplemental Security Income.

forfeited payments, were later convicted, and paid fines and fees upon conviction but received no credit for funds paid under the Deferred Prosecution Program. For those participants, the Defendants must refund the amount paid into the Deferred Prosecution Program that was forfeited without a credit. All participants who were terminated from the program on or after January 1, 2018, and are awaiting trial, failed to make their final payment as scheduled, or have been attached for failure to appear shall be given a choice to be placed back into the Deferred Prosecution Program upon appearance at the Mayor's Court within nine months of the Court's approval of the settlement agreement. The Defendants are required to provide general notice of this option through postings in the Clerk of Court's office and the Mayor's Court and including written notice of the option in all communications from the Mayor's Court. To the extent any such terminated participant made payments while participating in the Deferred Prosecution Program, they are entitled to a full credit of those payments either after re-enrollment into the Deferred Prosecution Program, towards any future fine or fee if the case is adjudicated, or to a refund if the case is dismissed.

The settlement agreement requires notification of the availability of alternatives for low income people in the Deferred Prosecution Program agreement with participants, on the City's online payment portal, and in any termination notices, default notices, payment receipts, or payment plans produced to program participants by the City Prosecutor, Clerk of Court, or other Defendants. The settlement agreement further requires that for a period of three years, the Defendants produce to the plaintiffs a monthly report identifying the total number of applicants, the number of applicants accepted, the number of applicants denied participation, and the number of indigency waivers sought.

In exchange, the plaintiffs agree to waive all claims described in the Complaint and First Amended Complaint.

3.   *Fairness Hearing*

A Fairness Hearing was held on December 4, 2020. Plaintiffs' counsel presented evidence that they created a proposed settlement website at www.GretnaDeferredProsecutionProgram.com ("Settlement Website"). The content of the Settlement Website [5] was approved by the Court in its September 3, 2020, ruling.

Plaintiffs' counsel also presented evidence that a Facebook advertisement was created as a "post" and targeted (or "boosted," to use Facebook's terminology) to reach users in the zip codes where a majority of Mayor's Court participants reside. The advertisement was boosted for three periods of three days from September 17-20, 2020; October 21-24, 2020; and October 29-November 1, 2020. The performance dashboard for the boosts shows that each boost was presented to between 10,000 and 11,000 individuals and that each boost resulted in between 300 and 600 post engagements (that is, the viewer reacts to the post, comments on the post, or shares the post). The content of the Facebook advertisement was also approved by the Court in its September 23, 2020, ruling.

Intervenors' counsel reported that they had sent the court-approved targeted mailing[6] to the 128 people eligible for refunds and credits, notifying them of the proposed settlement. They received 25 back as undeliverable. Counsel reported that individuals entitled to credits under the settlement agreement have already been credited. The refunds will be issued after the settlement

---

[5] The website provides information about the lawsuit and the proposed settlement.  It also provides access to all relevant documents in the case including the complaint, the proposed settlement, this order and reasons, and plaintiffs' Motion for Attorney's Fees.

[6] It provided a cover sheet with basic information about the proposed settlement and pages with additional details. The form explained how a class member could file objections or appear at the hearing to voice an objection. The form also provided a link to the Settlement Website.

is approved. For the addresses that resulted in returns as undeliverable, they will check their records for alternative addresses. As required by the settlement agreement, if the refunds are unclaimed after 12 months, the refund will be forwarded to the Louisiana Treasury Department's unclaimed property division where individuals can recover the funds through the applicable process. Intervenors' counsel also reported that physical fliers providing notice of the proposed settlement were posted in the Gretna Clerk of Court's office and at the Mayor's Court. He also reported that links to the Settlement Website were posted on the Gretna Police Department's website and the portal for online payments to the City.

Defendants reported that notice of the proposed settlement had been sent to the appropriate state and federal officials under the Class Action Fairness Act, 28 U.S.C. §1715 on June 3, 2020. They later supplemented the record with evidence of the letter sent by Federal Express to the United States Attorney General and the Louisiana Attorney General on June 3, 2020, for overnight delivery.

Ms. Richardson, the appointed class representative, testified at the Fairness Hearing. She described how she had a case before the Mayor's Court in 2017 at a time when she had been out of work for months. Even when she got a job in August 2017, she was behind on bills and was living paycheck to paycheck. To participate in the Deferred Prosecution Program at the time would have cost her $500, which she could not afford. She also testified that at the time, the only community service available was during the work week when she was not available. She testified that had the options available through the proposed settlement been available when she had her case before the Mayor's Court, it would have been helpful.

Michelle Goldman, a class member who received notice of the proposed settlement via a direct mailing, was also present and provided a statement. She described receiving citations for

moving violations in June 2015. She could not afford the fine. She agreed to participate in the Deferred Action Program and perform community service. But the community service was too strenuous, involving demolishing an old building by hand, with no breaks or water provided. She is not disabled, but is only five feet tall and was unable to perform the community service work. Her only other option was to pay the $700 fine.

The parties responded that the settlement agreement will address Ms. Goldman's concerns in the future because it requires that physical incapacity to fulfill a condition cannot be cause for termination from the program. Additionally, under the proposed settlement, Ms. Goldman is entitled to a refund for amounts forfeited the Deferred Prosecution Program.

<u>Law and Analysis</u>

1. *Certification of Settlement*

In the September 3, 2020, ruling, the Court found that each of the requirements to certify a class had been met and found it appropriate to certify a settlement class under Federal Rule of Civil Procedure 23. The class was certified, as defined above, for preliminary purposes. No objection has been raised. The court hereby adopts its original findings and approves and finalizes the certification of the settlement class as defined above.

2. *Approval of the Settlement*

a. *Legal Standard*

Federal Rule of Civil Procedure 23(e) permits the settlement of class actions only with the court's approval, following notice to the class. Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed

settlement is fair, reasonable, and adequate." In re Shell Oil Refinery, 155 F.R.D. 552, 555 (E.D. La. 1993).

In determining whether the settlement is fair, reasonable, and adequate, Rule 23(e) instructs the court to consider:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Rule 23(e)(3) requires the parties seeking approval to file a statement identifying any agreement made in connection with the proposal.

In assessing the fairness of a class settlement, courts in the Fifth Circuit typically consider the following factors: "(1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members." Newby v. Enron Corp., 394 F.3d 296, 301 (5th Cir. 2004); Ayers v. Thompson, 358 F.3d 356, 369 (5th Cir. 2004); In re Chinese-Manufactured Drywall Prod. Liab. Litig., 424 F. Supp. 3d 456, 485 (E.D. La. 2020).

### b.  Analysis of Proposed Settlement Agreement

The court now addresses whether the proposed settlement is fair, reasonable, and adequate as required by Rule 23(e). The court finds the Rule 23(e)(2) factors have been satisfied. Plaintiffs'

counsel has provided adequate representation. They have been involved throughout the litigation and, as discussed above, they are experienced litigators.

The proposed settlement was negotiated at arm's length. Counsel represents there are no side agreements and adds there is no damages award from which counsel might seek fees from the putative representative plaintiff and they have no agreement with the plaintiff for attorney's fees. Indeed, plaintiff has separately filed a motion for an award of attorneys' fees. The defendants do not contest that plaintiff is entitled to attorneys' fees, but have challenged the amount of fees claimed. The court will determine a reasonable attorney fee award in accordance with the applicable legal standards.

Next, the court finds that the proposed relief is adequate. The settlement agreement addresses plaintiffs' main complaint in detail by requiring changes to the Deferred Prosecution Program that will ensure that participants are not excluded based on an inability to pay. It also provides a refund of fees to class members who were terminated from the program, convicted, and fined without being given a credit for the program fees they had already paid. It further requires Defendants to waive all unpaid fees to the Deferred Prosecution Program in all accounts for cases filed in the Mayor's Court on or before December 31, 2017, resulting in dismissal of such cases. And it provides an option to be put back into the program for persons terminated on or after January 1, 2018 and who are awaiting trial or have failed to make a payment as scheduled or have been attached for failure to appear. The court finds that the proposed settlement fully remedies the alleged constitutional violations.

Further, considering the scope of relief, the court finds that the proposed settlement outweighs the inherent costs, risks, and delay of trial and appeal. The relief is primarily injunctive, and as discussed above, the court finds the injunctive relief fully remedies the alleged

constitutional violations. As to the refunds, the court finds the method of distributing relief to the class is effective—the Intervenors have already credited those participants entitled to a credit. They will mail class members instructions for how to claim their refunds. Although some of the notices of proposed settlement to refund recipients were returned as undeliverable, Intervenors will send instructions regarding obtaining refunds to alternative addresses if they have them. Further, if the refunds are unclaimed after 12 months, the refund will be forwarded to the Louisiana Treasury Department's unclaimed property division where individuals can reclaim funds through the state's procedures. If the plaintiffs had not agreed to settle on these beneficial terms, they would face the risk of a loss or more limited award at trial or the risk of a successful result followed by the delay of an appeal.

There is no attorneys fee proposal or other Rule 23(e)(3) agreement to be considered.  As noted above, the parties have not agreed to and in fact the defendants oppose the fee award requested by the plaintiffs. No other agreements made in connection with the settlement have been identified.

Finally, the court also finds that the agreement is equitable. An attorneys' fee award is not part of the settlement agreement and there are no side agreements. Thus, the court finds no conflict of interest arising from a disproportionate or lucrative attorney fee award agreed to between the parties.  Only an attorneys' fee deemed reasonable will be awarded by the court.  Importantly, such award will not reduce the benefit to the class. The injunctive relief is the same across the class and is, therefore, equitable. Although some class members will receive refunds, the distinction is based on whether a class member forfeited funds. Only class members who have not forfeited funds will not receive a refund. The court finds that the class members are treated equitably relative to each other.

Turning to the Fifth Circuit's factors, the Court finds there is no evidence of fraud or collusion. The likely expense and duration of the litigation through appeal weighs in favor of settling now. As to the stage of litigation, the parties have engaged in extensive discovery, including the deposition of nine participants and stakeholders in the Deferred Prosecution Program. Plaintiffs' counsel also obtained documents through public records requests and propounded written discovery. The court finds plaintiff is sufficiently informed to assess the parties' positions and determine that the settlement is in the best interest of the settlement class.

The court next considers the plaintiffs' probability of success and the range of possible recovery. Although the proposed settlement does not include a declaration of unconstitutionality, it fully remedies the alleged Equal Protection violations by re-instating participants who were terminated for an inability to pay and providing a process to ensure that no participants can be terminated for inability to pay. Plaintiffs' counsel is confident in their ability to succeed at trial but recognizes the inherent risk of litigation. Indeed, at trial, the plaintiffs might not have succeeded in establishing a constitutional violation, or, even if they did succeed, they might not have obtained all the relief provided for in the settlement agreement. At the Fairness Hearing, plaintiffs' counsel explained that an important benefit of this settlement agreement as compared to a judgment imposing injunctive relief is that because the parties worked toward this resolution together, there is "buy in" from the Defendants and Intervenors. Plaintiffs' counsel submits that there is a better chance of successful implementation of the proposed changes under these circumstances. The court finds that considering the probability of success and the range of possible outcomes, the benefits of this mutual agreement when it comes to implementation of programmatic changes weighs in favor of approving the settlement as fair and reasonable.

Finally, the opinions of class counsel, class representatives, and absent class members support approval of the settlement. Class counsel concludes that the proposed settlement is fair, adequate, and reasonable to all class members. The settlement agreement was explained to putative class representative Ms. Richardson. At the fairness hearing, Ms. Richardson testified that she agreed that she would have been helped by the injunctive relief called for in the settlement agreement. She also agreed that the settlement was fair. Ms. Goldman, the class member who appeared to provide a statement about her experience with the Deferred Action Program, also seemed satisfied that the settlement would remedy the issues she had experienced. After notice was provided to the class members, no class member filed an objection into the record or appeared at the hearing to voice an objection to the proposed settlement. The court finds that the opinions of class counsel, class representatives, and absent class members weigh in favor of approving the settlement.

Considering all the applicable factors, the court finds that the settlement is fair, adequate and reasonable.

3.   *Notice*

    a.   *Legal Standards*

Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice must also satisfy the Constitution's due process requirements by being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 3 Newberg on Class Actions § 8:15 (5th ed.) (quoting Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 629 (6th Cir. 2007)). One frequent question is whether the settlement notice must be individualized. See id.  In

the case of Rule 23(b)(2) class settlement like this one, individualized notice is not required, but may be ordered by the court. See id.

Additionally, the Class Action Fairness Act requires that defendants provide notice of a proposed class action settlement to the appropriate state and federal officials no later than 10 days after the proposed settlement is filed in court. 28 U.S.C. §1715(b). The appropriate Federal official is the Attorney General of the United States unless the defendant is a Federal or State depositary institution or similar. Id. §1715(a)(1). The appropriate State official is the person with primary regulatory or supervisory authority over the defendant or who licenses the defendant do business in the state. Id. §1715(a)(2). Where there is no such person, then the State Attorney General must be notified. Id. The court cannot order final approval of the settlement earlier than 90 days of the later of the notice to the appropriate State and Federal officials. Id. §1715(d).

   b. *Analysis of Notice Provided*

The parties have provided notice to members of the class in the manner discussed and approved by the Court on September 3, 2020. Specifically, individualized notice on the approved form was sent to the members of subclasses B and C who have been identified as eligible for a refund or a credit. The notice provided a cover sheet with basic information about the proposed settlement and pages with additional details. It explained how a class member can file objections or appear at the hearing to voice an objection. It provided a link to the Settlement Website.

As to the remaining class members, generalized notice was provided in three ways. First, plaintiff used targeted Facebook advertisements or "boosted" posts that were boosted for a total of 9 days and were shown on users' timelines over 30,000 times. Additionally, links to the Settlement Website were posted on the Gretna Police Department's Website and the portal for online

payments to the City of Gretna. Further, hard copy fliers were posted at the Gretna Clerk of Court's office and in the courtroom of Mayor's Court.

The court previously found that the notices are in plain, easily understood language and provide information about the lawsuit, the benefits of settlement, how to object, how to participate in the hearing, and how to obtain additional information (by visiting the Settlement Website or calling plaintiffs' counsel). The individualized notice and the Settlement Website include additional information about the lawsuit, the settlement, the Deferred Prosecution Program, and a summary of who qualifies as a class member. The court again finds the content of the proposed notice satisfies Due Process and the reasonableness requirement of Rule 23(e)(1).

The court also previously found that the methods of notice were acceptable. The court finds that as to those class members who will be eligible for a refund or a credit, the proposed individualized notice via U.S. Mail satisfies Due Process and the reasonableness requirement of Rule 23(e)(1). Further, as to those current class members who will receive a waiver of fees owed or who will be affected only by the availability of new procedures ensuring that inability to pay will not prevent participation in or result in termination from the Deferred Prosecution Program, the court finds generalized notice satisfies Due Process and the reasonableness requirement of Rule 23(e)(1). The number of class members is unknowable and would be some subset of the 1,633 to 1,851 annual participants over a period of years. The use of targeted Facebook, posting on the Gretna's Police department website and the City's payment portal website, and flyers to be displayed at the Gretna Clerk of Court's office and in Mayor's Court  is an effective method to reach class members. As the court previously found, there is no indication that using a print

publication would be more effective in reaching class members;[7] and at a cost of over 25 times the cost of the Facebook advertisements, print publication would not be cost effective.

Rule 23(h) requires that notice of a motion for attorneys' fees must be "directed to class members in a reasonable manner." The individualized notice and the Settlement Website included a statement notifying the putative class of the Motion for Attorneys' Fees. The notice and Settlement Website clarify that any award will have no effect on the class members' recovery. The Motion for Attorneys' Fees was made available for class members' review on the Settlement Website, where it was also available to those receiving generalized notice. The court finds this is sufficient to satisfy Rule 23(h).

The court further finds that the requirements of the Class Action Fairness Act have been met. Plaintiffs filed their Motion for Preliminary Approval of Class Settlement into the record on May 14, 2020. Defendants sent notice via certified mail to the Attorney General of the United States and the Attorney General of Louisiana on June 3, 2020.  Although this is more than ten days following the proposed settlement being entered into the record, the Fairness Hearing was not held until six months later giving the Attorneys Generals ample opportunity to appear and voice any objection. Other courts have found that even where the technical 10 day requirement has not been met, notice satisfies the Act as long as "the appropriate state and federal officials have had 'sufficient notice and opportunity to be heard' about the settlements." In re Pool Prod. Distribution Mkt. Antitrust Litig., No. MDL 2328, 2015 WL 4528880, at *6 (E.D. La. July 27, 2015) (quoting In re Processed Egg Prod. Antitrust Litig., 284 F.R.D. 249, 258 n. 12 (E.D. Pa. 2012)). Further,

---

[7] E.g., Robert H. Klonoff, Mark Herrmann, Bradley W. Harrison, Making Class Actions Work: The Untapped Potential of the Internet, 13 J. Internet L. 1, 14 (2009). ("The decline of newspaper readership exacerbates the long-recognized problem that absent class members are not likely to encounter a legal notice published in a newspaper, even if they read the paper.").

approval of the settlement is being ordered more than 90 days after the notice was provided in accordance with §1715(d). Accordingly, the court finds that the requirements of the Class Action Fairness Act with regard to notice have been satisfied.

<u>Conclusion</u>

For the foregoing reasons,

1.  The preliminary certification of the settlement class is hereby finalized as consisting of:

    All persons who in the past year were denied participation in, terminated from, or threatened with termination from the deferred prosecution program due to their inability to pay program fees.

    Subclass A: all persons with unpaid Deferred Prosecution Program fees on a case filed in the Gretna Mayor's Court on or before December 31, 2017.

    Subclass B: all persons terminated from the Deferred Prosecution Program from June 1, 2015, to present, who forfeited payments to the program, were later convicted, paid fines and fees upon conviction, but received no credit for the funds forfeited to the Deferred Prosecution Program.

    Subclass C: all persons terminated from the Deferred Prosecution Program on or after January 1, 2018, for failure to pay and are either (i) awaiting trial or (ii) have failed to make their final payment as scheduled or have been attached for failure to appear.

2.  The court hereby approves the settlement agreement as fair, reasonable, and adequate.

New Orleans, Louisiana, this <u>18th</u> day of December, 2020.

Janis van Meerveld
United States Magistrate Judge

17