UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TAMARA G. NELSON, ET AL., | * | CIVIL ACTION |
| *Plaintiffs* | * | NO. 17-14581 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| BELINDA C. CONSTANT, ET AL. | * | MAGISTRATE JUDGE |
| *Defendants* | * | JANIS VAN MEERVELD |
| | * | |

ORDER AND REASONS

Before the court is the plaintiffs' Motion for Reconsideration under Rule 59. (Rec. Doc. 171). For the following reasons, the Motion is DENIED.

Background

Plaintiffs filed this lawsuit to challenge certain procedures at the Mayor's Court of the City of Gretna under the Due Process and Equal Protection Clauses of the United States Constitution. The Equal Protection claims, described by plaintiffs as Count II, were settled. The Due Process claims, described as Count I, alleged a financial conflict of interest in the Mayor's Court. Plaintiffs alleged that the Mayor's Court, which is appointed by the City Council and serves at the pleasure of the Mayor, is incentivized to maximize arrests and multiply prosecutions to generate fines and fees that fund the City of Gretna. Plaintiffs sought to certify a class of persons cited to appear before the Mayor's Court who are awaiting adjudication of their criminal or traffic cases.

Defendants filed a Motion for Summary Judgment and plaintiffs filed a Motion for Partial Summary Judgment on Count I. Following extensive oral argument on January 24, 2020, the Court issued an Order and Reasons on February 20, 2020, denying the plaintiffs' Motion and granting the defendants' Motion. The court carefully considered the substantiality of the fees generated by the Mayor's Court, the overlap in the executive and judicial functions, the alleged

1

temptation faced by the Magistrates, and the alleged temptation faced by the City Prosecutor in concluding that, on the undisputed facts, the Mayor's Court could not present an institutional financial conflict of interest.

Following court approval of the settlement of the Count II Equal Protection claims, the court entered judgment on all claims on January 15, 2021. On February 12, 2021, plaintiffs filed the present Motion for Reconsideration under Rule 59.

Plaintiffs argue that reconsideration is appropriate because the court erroneously considered the temptation that an *average attorney* would face and should have considered the *average person*. They also argue that reconsideration is appropriate because the court should have considered revenue from the Deferred Prosecution Program in analyzing the potential conflict of interest.

Defendants oppose. They argue that plaintiffs have not met the standard for reconsideration because they merely raise arguments and legal theories that the court has already considered and ruled upon.

Plaintiffs' Motion was taken under submission on March 31, 2021. No reply memorandum was filed.

Law and Analysis

1. *Standard for Motion for Reconsideration*

"The Federal Rules of Civil Procedure do not provide for a 'Motion for Reconsideration' but such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment." <u>Hamilton Plaintiffs v. Williams Plaintiffs</u>, 147 F.3d 367, 371 n. 10 (5th Cir. 1998). If filed within the time period required by Rule 59(e), a motion for reconsideration is considered under that rule. <u>See</u> <u>id.</u>; <u>Shimon v. Sewage &</u>

Water Bd. of New Orleans, No. CIV.A. 05-1392, 2007 WL 101038, at *1 (E.D. La. Jan. 9, 2007). A Rule 59(e) "motion to alter or amend judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. Proc. 59(e). Plaintiffs here have filed their motion for reconsideration within 28 days of the judgment and, accordingly, Rule 59(e) applies.[1]

"A motion to alter or amend judgment [under Rule 59(e)] must 'clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005) (quoting Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)). It "cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" Rosenblatt v. United Way of Greater Houston, 607 F.3d 413, 419 (5th Cir. 2010) (quoting Rosenzweig v. Azurix Corp., 332 F.3d 854, 863 (5th Cir. 2003)). Reconsidering a judgment is extraordinary, and the court "must balance between two competing interests: the desire to achieve and maintain a final judgment and the desire to reach a just decision based upon the evidence." Shimon v. Sewage & Water Bd. of New Orleans, No. CIV.A. 05-1392, 2007 WL 101038, at *2 (E.D. La. Jan. 9, 2007); see Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004) ("Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.).

---

[1] The court notes that it issued the Order and Reasons challenged by the plaintiffs almost one year earlier, on February 20, 2020. (Rec. Doc. 131). That Order and Reasons did not dispose of all issues in the case because the parties still had to seek court approval of their settlement of the remaining claims. After the court's approval, final judgment was entered on all claims on January 15, 2021. Although plaintiffs might have sought reconsideration of the February 20, 2020, ruling at an earlier time, they chose not to do so. See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994) ("[B]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."); see also Fed. R. Civ. P. 54(b); Vladmir Ltd. v. Pac. Parts Supply Co., No. CIV.A.SA-08-CV-819XR, 2009 WL 4110288, at *2 (W.D. Tex. Nov. 20, 2009).

When deciding whether to consider late-filed evidence, "the court should consider, among other things, (1) the reasons for the plaintiffs' default, (2) the importance of the evidence to the plaintiffs' case, (3) whether the evidence was available to plaintiffs before they responded to the summary judgment motion, and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened." Ford v. Elsbury, 32 F.3d 931, 937–38 (5th Cir. 1994). But the court notes that the mover is not required to "first show that her default was the result of mistake, inadvertence, surprise, or excusable neglect or that the evidence is such as to show that the judgment was manifestly wrong." Id. at 937 (5th Cir. 1994) (quoting Lavespere, 910 F.2d at 174).

2. Analysis

   a. Average Person Standard

Plaintiffs seize on this court's statement that "[t]here is nothing to suggest that the average attorney with the experience of Olden or Toups would be tempted to skew the burden of proof because of the risk of losing a part-time job that paid $87.55 per hour." (Rec. Doc. 131, at 25). They argue that the court should have considered whether the average *person* would have been tempted by that risk and they cite the estimated median salary in Gretna in 2017 was $41,260[2] to argue that the average person in Gretna would consider pay of $87.55 per hour to be lucrative.

Reconsideration is not appropriate here. This court did not adopt a new standard. Instead, the court explicitly recognized the applicability of the average man as judge standard.[3] Id. at 10-

---

[2] Defendants argue that the Court should not consider the Exhibits submitted by the plaintiffs, which contain information from the U.S. Census Bureau website regarding median income, mean income ($62,290), and the percentage of people whose income fell below the poverty level (20%) in Gretna. The plaintiffs do not argue that the matter should be reopened to allow consideration of "newly discovered evidence," nor do they explain whether the information was available earlier or why they did not submit it previously. The court presumes this information was, in fact, available earlier because it was obtained from the U.S. Census Bureau website for a time period over two years prior to the hearing on their Motion for Summary Judgment. Regardless, even if this evidence had been considered, it does not change the Court's assessment of the possible temptation experienced by the average person in Toups' or Olden's position.

[3] Courts distinguish the "average man as judge standard" from a subjective standard that would consider whether the individual judge had actually been biased. Brown v. Vance, 637 F.2d 272, 284 (5th Cir. 1981) ("We need find no

4

13. The court then applied the average man as judge standard. As to the salaries, the court concluded that "plaintiffs fail to show that the Magistrates' salaries would be considered lucrative by the *average person* in the position of Toups or Olden." Id. at 25 (emphasis added). Taken in context, the "average attorney" statement quoted by the plaintiffs refers merely to the fact that the average person serving as a magistrate would be able to earn a similar if not higher hourly rate doing other work as an attorney.[4] To read that sentence out of context as applying a new standard is disingenuous. Importantly, and as pointed out by the defendants, the court's determination of the possible temptation faced by Olden and Toups did not turn on their salary. The court considered the totality of the circumstances. Id. at 22-23; see Cain v. White, 937 F.3d 446, 454 (5th Cir. 2019) (footnote omitted) (emphasizing that "it is the totality of this situation, not any individual piece, that leads" to the court's conclusion regarding the temptation). The court considered the salary the Magistrates would forego if they lost their position as magistrates, that the Magistrates' salary was not tied to volume of convictions, that the Magistrates have no administrative or executive authority over the General Fund or Gretna itself, that the Mayor does not control the Magistrates' salary, that the Magistrates had served under multiple Mayors, and that the Magistrates' salaries

---

instance of actual judicial bias to hold the fee system constitutionally infirm."); see Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881 (2009) ("The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'"); Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 (1986) ("[W]e are not required to decide whether in fact [the judge] was influenced . . . ."); Tumey v. State of Ohio, 273 U.S. 510, 532 (1927) ("[T]he requirement of due process of law in judicial procedure is not satisfied by the argument that men of the highest honor and the greatest self-sacrifice could carry it on without danger of injustice."). Plaintiffs cite no case law to support their argument that the "average man as judge" standard requires a court to compare the financial benefit received by the adjudicator to the average income in the region.

[4] That section reads in full:
> But plaintiffs fail to show that the Magistrates' salaries would be considered lucrative by the average person in the position of Toups or Olden. They both maintain their own private law practices. Attorneys' fee awards in this district regularly find hourly rates of $240 or more to be reasonable. There is nothing to suggest that the average attorney with the experience of Olden or Toups would be tempted to skew the burden of proof because of the risk of losing a part-time job that paid $87.55 per hour.

(Rec. Doc. 131, at 25).

5

had not changed even in the face of decreasing revenues. The court concluded that "the court cannot find that the Magistrates face a possible temptation to forget the burden of proof and convict the defendants before them, failing to hold the balance nice, clear and true between the state and the accused." Id. at 26.

Plaintiffs simply disagree with the court's conclusion. They have failed to show a manifest error of law.

### b. *Deferred Prosecution Revenues*

Plaintiffs argue that considering the funds generated by the Mayor's Court "combined with the Mayor's and Magistrates' shared temptation," the court should have found a constitutional violation. They argue that revenue from the Deferred Prosecution Program should have been considered when measuring the potential conflict of interest in the Mayor's Court. They recognize the court's finding that the City Prosecutor was not subject to an unconstitutional conflict of interest, but they argue that the court failed to consider that the conflict arises from both the "prosecutor and the judges being at-will employees of the executive, for whom they generate revenue." They argue that the Magistrates face a possible temptation to maintain a high conviction rate and also to incentivize participation in the deferred prosecution program, which would save the city the cost of providing additional legal process. They argue that the constitutional violation they complain of is inherent in the acts of the Mayor, the Magistrates, the City Prosecutor, and the police. They reurge their argument that their case involves a government-wide conflict akin to Tumey v. Ohio, 273 U.S. 510 (1927) and Ward v. Village of Monroeville, 409 U.S. 57 (1972). They object to the court's conclusion that the City Prosecutor, who lacks control over the funds generated by the deferred prosecution program, mirrors the case in Harjo v. City of Albuquerque, 326 F. Supp. 3d 1145 (D.N.M. 2018). They argue that the prosecutor faces a temptation to remain

6

in the executive's good graces because he receives a salary of $73,447 plus healthcare, which they submit the average person would find lucrative. They distinguish Harjo, arguing that unlike in Harjo, here the City Prosecutor is an at-will employee of the Mayor and the funds generated by the forfeiture program are under the Mayor's control. Plaintiffs also argue that they have presented evidence that the Gretna Police Department has a custom of charging all crimes as municipal ordinance violations whenever a state misdemeanor analog exists and that it has a quota system in place. They add that the Chief of Police directly ordered an increase in citations, threatening that a failure to increase court revenue would endanger the officer's retirement. They concede that the Chief of Police is separately elected and not under the Mayor's control, but they submit that the Chief of Police's department depends on the General Fund to operate. Plaintiffs argue that for these reasons, the revenue of the Deferred Prosecution Program should have been included in the Court's assessment of the potential conflict of interest.

Defendants oppose. They submit that the Court already considered the argument plaintiffs now raise and rejected it. Defendants argue that plaintiffs' rehashed argument does not demonstrate that the Court's analysis was manifestly erroneous warranting reconsideration under Rule 59.

As the defendants point out, the Court has already considered plaintiffs' argument that revenue from the Deferred Prosecution Program should be considered. The court declined to do so, concluding that such revenues could not "properly be attributed to the structural temptation potentially felt by the Magistrates" because program participants are "not found guilty by the Magistrates, and Magistrates are not tasked with applying the appropriate burden of proof to the evidence before them." (Rec. Doc. 131, at 23-24). In any event, the court concluded even

> [i]f such revenues were included, however, the range of revenues as a portion of the General Fund ranges from 9.6% to 13.6%. Even these are hardly "staggering,"

7

though closer to the range considered sufficient in Cain and Caliste. Under either calculation, the relative volume of funds generated by the Mayor's Court might create an impermissible conflict of interest if, like in Rose and DePiero, the Mayor herself served as the adjudicator. 180 F.3d at 776. But that is not the case here.

Id. (footnote omitted).

Like the defendants, the court is unable to identify any new argument, evidence, or consideration from the string of arguments and evidence plaintiffs have, somewhat haphazardly, stitched together in support of the present motion. A motion for reconsideration is not a vehicle for restating arguments that failed to convince the Court a year ago or to raise new arguments that could have been raised originally. Plaintiffs have failed to show a manifest error of law or fact justifying reconsideration of this court's prior ruling.

## Conclusion

Plaintiffs have failed to clearly establish either a manifest error of law or fact. Nor have they presented newly discovered evidence justifying reconsideration. Accordingly, the Motion for Reconsideration is DENIED.

New Orleans, Louisiana, this 13th day of April, 2021.

_____
Janis van Meerveld
United States Magistrate Judge